

**IT IS HEREBY ADJUDGED and DECREED that the below described is SO ORDERED.**

**Dated: July 07, 2024.**

_____

**SHAD M. ROBINSON**
**UNITED STATES BANKRUPTCY JUDGE**

---

**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| **QUICK DRY CARPET CLEANING, LLC** | § | **Case No.  23-10638** |
| | § | |
| | § | **Chapter 11 (Subchapter V)** |
| Debtor | § | |

### FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER CONFIRMING PLAN OF REORGANIZATION

---

On June 27, 2024, the Court conducted a hearing on the confirmation of the Amended Subchapter V Plan of Reorganization dated February 20, 2024 ("Plan") [Dkt.#141] filed by Quick Dry Carpet Cleaning, LLC ("Debtor" or "Quick Dry"). A copy of the Plan with exhibits and amendments thereto is attached as **Exhibit A**. This Court having considered the testimony and evidence presented and reviewed the Plan and, it appearing to the Court that the notice of the Confirmation Hearing and the opportunity for any party in interest to object to confirmation have been adequate and appropriate as to all parties affected or to be affected by the Plan and the transactions contemplated thereby, and the legal and factual bases set forth

in the documents filed in support of confirmation and presented at the Confirmation Hearing establish just cause for the relief granted herein; and after due deliberation thereon and good cause appearing therefore, the Court, in addition to the findings of fact and conclusions of law set forth by the Court in its oral ruling on the record at the hearing on June 27, 2024, hereby FINDS, ADJUDGES, AND DECREES THAT[1]:

## I.    FINDINGS OF FACT AND CONCLUSIONS OF LAW

### A.    JURISDICTION AND VENUE.

1.    The Debtor commenced this chapter 11 case (the "Chapter 11 Case") on August 15, 2023 (the "Petition Date") by filing voluntary petitions for relief under subchapter V of chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). Venue in the United States Bankruptcy Court for the Western District of Texas, Austin Division (the "Bankruptcy Court") was proper as of the Petition Date pursuant to 28 U.S.C. §§ 1408 and 1409 and continues to be proper during the Chapter 11 Cases. Confirmation of the Plan is a core proceeding under 28 U.S.C. § 157(b)(2). The Bankruptcy Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1334. The Bankruptcy Court has exclusive jurisdiction to determine whether the Plan complies with the applicable provisions of the Bankruptcy Code and should be confirmed.

### B.    ELIGIBILITY FOR RELIEF.

2.    The Debtor is an entity eligible for relief under § 109 and Subchapter V of Chapter 11 of the Bankruptcy Code.

---

[1] All capitalized terms used in this Confirmation Order shall have the meanings as defined in section 1.01 of the Plan unless such terms are otherwise defined in this Confirmation Order.

C.       **JUDICIAL NOTICE.**

3.       The Bankruptcy Court takes judicial notice of (and deems admitted into evidence for confirmation) the docket of the Chapter 11 case maintained by the clerk of the applicable court or its duly appointed agent, including all pleadings and other documents on file, all orders entered, all hearing transcripts, and all evidence and arguments made, proffered, or adduced at the hearings held before the applicable court during the pendency of the Chapter 11 case.

D.       **TRANSMITTAL AND MAILING OF MATERIALS; NOTICE.**

4.       Due, adequate, and sufficient notice of the Plan, and Confirmation Hearing, together with all deadlines for voting on or objecting to the Plan, has been given and no other or further notice is or shall be required.

E.       **SOLICITATION.**

5.       Votes for acceptance or rejection of the Plan were solicited in good faith and in compliance with § 1126 of the Bankruptcy Code, Bankruptcy Rule 3018, and all other applicable provisions of the Bankruptcy Code. Such transmittal and service were adequate and sufficient, and no further notice is or shall be required.

F.       **VOTING CERTIFICATION.**

6.       The tabulation of the ballots was conducted in accordance with the Bankruptcy Code. As evidenced by the Ballot Summary filed by the Debtor, three voting classes of creditors voted to accept the Plan and no voting class rejected the Plan, the remaining creditor classes have been provided their statutorily prescribed treatment under § 1129(a)(9)(C) and (D) of the Bankruptcy Code in the Plan and have not voted to reject the Plan and any objections have been resolved as stated on the record.

**G.     COMPLIANCE WITH THE REQUIREMENTS OF § 1129 OF THE BANKRUPTCY CODE.**

7.      A plan proponent has the burden to prove the requirements for confirmation by a preponderance of the evidence. Here, the Debtor has satisfied its burden of proof with respect to confirmation of the Plan.

**(i)     SECTION 1191(a)**

8.      The Plan (with any modifications as set forth below) and the Debtor have satisfied all applicable requirements for confirmation of the Plan under 11 U.S.C. § 1191(a).

**(ii)     SECTION 1129(d)—PRINCIPAL PURPOSE OF THE PLAN IS NOT AVOIDANCE OF TAXES.**

9.      No Governmental Unit has requested that the Bankruptcy Court refuse to confirm the Plan on the grounds that the principal purpose of the Plan is the avoidance of taxes or the avoidance of the application of § 5 of the Securities Act. As evidenced by its terms, the principal purpose of the Plan is not such avoidance. Accordingly, the Plan satisfies the requirements of § 1129(d) of the Bankruptcy Code.

**H.     SATISFACTION OF CONFIRMATION REQUIREMENTS.**

10.     Based upon the foregoing, the Plan satisfies the requirements for confirmation set forth in § 1129 and Subchapter V of the Bankruptcy Code.

**I.     GOOD FAITH.**

11.     The Debtor and its principals, agents, financial advisers, attorneys, employees, affiliates, and representatives have been, are, and will continue to act in good faith if they proceed to: (a) consummate the Plan and the agreements, settlements, transactions, and transfers contemplated thereby; and (b) take the actions authorized and directed by the Confirmation

Order.

### J.    IMPLEMENTATION.

12.    All documents and agreements necessary to implement the Plan and all other relevant and necessary documents have been negotiated in good faith, at arm's length, and are in the best interests of the Debtor and the Reorganized Debtor and shall, upon completion of documentation and execution be valid, binding, and enforceable documents and agreements not in conflict with any federal or state law.

## II.    ORDER

**BASED ON THE FOREGOING FINDINGS OF FACT, IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED THAT:**

### A.    ORDER.

13.    This Confirmation Order confirms the Debtor's Plan dated February 20, 2024 (herein "Plan"), and any amendments thereto, as a non-consensual plan under § 1191(b) of the Bankruptcy Code. The terms of the Plan are incorporated by reference into, and are an integral part of, this Confirmation Order.

### B.    FINDINGS OF FACT AND CONCLUSIONS OF LAW.

14.    The findings of fact and the conclusions of law stated in this Confirmation Order, in addition to the findings of fact and conclusions of law set forth by the Court in its oral ruling on the record at the hearing on June 27, 2024, shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to the proceeding by Bankruptcy Rule 9014. To the extent any finding of fact shall be determined to be a conclusion of law, it shall be so deemed, and to the extent any conclusion of law shall be determined to be a finding of fact, it shall be so deemed.

C.      **CONFIRMATION OF THE PLAN.**

15.      The Plan is hereby CONFIRMED in each and every respect as a consensual plan

pursuant to §§ 1191(a) & 1129, with the modifications set forth below. The documents referenced

in the Plan and any amendments, modifications, and supplements thereto, and all documents and

agreements related thereto, and the execution, delivery, and performance thereof by the Debtor

are authorized and approved as finalized, executed, and delivered. Without further order or

authorization of the Bankruptcy Court, the Debtor is authorized and empowered to make all

modifications to all documents included as part of the Plan that are consistent with the Plan. As

set forth in the Plan, once finalized and executed, the documents contemplated by the Plan shall

constitute legal, valid, binding, and authorized obligations of the respective parties thereto,

enforceable in accordance with their terms and, to the extent applicable, shall create, as of the

Effective Date, all Liens and other security interests purported to be created thereby.

16.      The terms of the Plan shall be effective and binding as of the Effective Date of the

Plan.

D.      **NOTICE OF ENTRY OF THE CONFIRMATION ORDER.**

17.      In accordance with Bankruptcy Rules 2002 and 3020(c), within three (3) business

days of the date of entry of the Confirmation Order, the Debtor shall serve the notice of

confirmation, notice of the Effective Date of the Plan and notice of all bar dates and deadlines

set forth in the Plan by CM/ECF; United States mail, first class postage prepaid; by hand; or

by overnight courier service to all parties having been served with the Confirmation Hearing

Notice. Mailing of the Notice of Confirmation in the time and manner set forth in this paragraph

shall be good and sufficient notice under the particular circumstances and in accordance with

the requirements of Bankruptcy Rules 2002 and 3020(c), and no other or further notice is

necessary. Debtor shall promptly file a certificate of service of the Notice of Confirmation on CM/ECF.

18.     The Notice of Confirmation shall have the effect of an order of the Bankruptcy Court, shall constitute sufficient notice of the entry of the Confirmation Order to such filing and recording officers, and shall be a recordable instrument notwithstanding any contrary provision of applicable non-bankruptcy law.

19.     <u>Discharges, Releases, and Injunctions</u>.  The discharge, releases, and injunctions, moratoriums, limitations of liability, and covenants not to sue set forth in the Plan, are approved and authorized in their entirety. On the Effective Date, Debtor shall be and is hereby discharged to the extent and as provided by 11 U.S.C. § 1141(d)(1), except that Debtor will not be discharged of any debt or obligation: (i) imposed by this Plan; (ii) excepted from discharge under 11 U.S.C. § 523 as provided by 11 U.S.C. § 1141(d)(2) if the Debtor is an individual; and (iii) to the extent provided in 11 U.S.C. § 1141(d)(6) if the Debtor is a corporation.

20.     **EXCEPT AS OTHERWISE PROVIDED IN THIS CONFIRMATION ORDER, THE PLAN, OR BY ORDER OF THE BANKRUPTCY COURT, UPON CONFIRMATION OF THE PLAN (AND FROM AND AFTER THE EFFECTIVE DATE) ALL PERSONS WHO HAVE HELD, HOLD, OR MAY HOLD CLAIMS OR LIENS AGAINST, OR EQUITY INTERESTS IN, THE DEBTOR OR ITS PROPERTIES ARE PERMANENTLY RESTRAINED AND ENJOINED FROM TAKING ANY OF THE FOLLOWING ACTIONS AGAINST THE ESTATE, THE DEBTOR, AND/OR THE REORGANIZED DEBTOR:  (A) COMMENCING OR CONTINUING, IN ANY MANNER, ANY ACTION OR OTHER PROCEEDING OF ANY KIND WITH RESPECT TO ANY CLAIM AGAINST THE DEBTORS, THE REORGANIZED**

**DEBTORS, OR THEIR RESPECTIVE ASSETS; (B) ENFORCING, ATTACHING, COLLECTING, OR RECOVERING ON ACCOUNT OF ANY CLAIM BY ANY MANNER OR MEANS, ANY JUDGMENT, AWARD, DECREE, OR ORDER AGAINST THE REORGANIZED DEBTOR OR THE ASSETS, EXCEPT PURSUANT TO AND IN ACCORDANCE WITH THE PLAN; (C) CREATING, PERFECTING, OR ENFORCING ANY ENCUMBRANCE OF ANY KIND AGAINST EITHER THE ASSETS OR THE REORGANIZED DEBTOR; (D) ASSERTING ANY CONTROL OVER, INTEREST, RIGHTS OR TITLE IN OR TO ANY OF THE ASSETS, EXCEPT AS PROVIDED IN THE PLAN; (E) ASSERTING ANY SETOFF OR RECOUPMENT OF ANY KIND AGAINST ANY OBLIGATION DUE THE REORGANIZED DEBTOR AS ASSIGNEES, EXCEPT UPON LEAVE OF THE BANKRUPTCY COURT OR EXCEPT AS AUTHORIZED BY BANKRUPTCY CODE SECTION 553; AND/OR (F) PERFORMING ANY ACT, IN ANY MANNER, IN ANY PLACE WHATSOEVER, THAT DOES NOT CONFORM TO OR COMPLY WITH THE PROVISIONS OF THE PLAN; PROVIDED, HOWEVER, THAT THIS INJUNCTION SHALL NOT BAR ANY CREDITOR FROM ASSERTING ANY RIGHT GRANTED PURSUANT TO THE PLAN; AND PROVIDED FURTHER, HOWEVER, THAT EACH HOLDER OF A CONTESTED CLAIM SHALL BE ENTITLED TO ENFORCE ITS RIGHTS UNDER THE PLAN, INCLUDING SEEKING ALLOWANCE OF ITS CONTESTED CLAIM PURSUANT TO THE PLAN.**

    **E.**    <u>**BINDING EFFECT.**</u>

    21.    Notwithstanding Bankruptcy Rules 3020(e), or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of the Plan shall be immediately effective and

enforceable and deemed binding upon the Debtor, the Reorganized Debtor, and any and all holders of Claims or Equity Interests (irrespective of whether such Claims or Equity Interests are deemed to have accepted the Plan), all Persons that are parties to or are subject to the settlements, compromises, releases, discharges, and injunctions described in the Plan, each Person acquiring property under the Plan, and any and all non-Debtor parties to executory contracts and unexpired leases with the Debtors.

22.     The rights, benefits, and obligations of any Person named or referred to in the Plan shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor or assign, affiliate, officer, director, agent, representative, attorney, beneficiaries, or guardian, if any, of each Person.

### F.     SPECIAL SUBCHAPTER V PROVISIONS

23.     Pursuant to 11 U.S.C. § 1141(b), except as otherwise provided in the Plan or in this Confirmation Order, as of the Effective Date, all the property of the Estate vests in the Debtor. Except as provided in 11 U.S.C. § 1141(d)(2) and (3), and except as otherwise provided in the Plan or in this Confirmation Order, after Confirmation of the Plan, the property dealt with by the Plan is free and clear of all Claims and Interests of creditors. If the Debtor's bankruptcy case is subsequently converted to Chapter 7, all property of the Debtor shall automatically revest and become property of the bankruptcy estate of the Debtor in the converted Chapter 7 case.

**SubChapter V Trustee Specific Provisions**

24.     The services of the Subchapter V Trustee shall terminate upon substantial consummation of the Plan, and the Debtor is to file and serve a Notice of Substantial Consummation upon the Subchapter V Trustee, the U.S. Trustee, and all parties-in-interest within fourteen (14) days following substantial consummation as required under 11 U.S.C. § 1183(c)(1)

and (2).

25.     The Effective Date of the Plan shall be July 15, 2024.

**G.      PLAN CLARIFICATIONS**

26.     The following Nonmaterial Plan Modifications are hereby approved:

27.     **Provision Specific to Americredit Financial**- AmeriCredit shall retain its lien as to its collateral.  Debtor shall resume payments under the terms and conditions of the Contract by and between Debtor and AmeriCredit with payments commencing on the 16th day of the first month following the Effective Date of the Plan.  All arrears up until the commencement of payments under the Plan, together with attorney's fees of $700.00 shall be added to the end of the Note.  Except as modified by this provision, the Contract by and between Debtor and AmeriCredit shall remain in effect.

28.     **Provisions Specific to Lionheart Funding, LLC ("Lionheart")**- Notwithstanding anything else to the contrary in the Plan, Lionheart has filed a UCC-1 Financing Statement and Proof of Claim asserting a security interest in various assets of the Debtor. The Debtor believes Lionheart to be a lienholder junior in position to both Kalamata and the IRS, provided for in Classes 1, 2 & 3 of the Plan. The Debtor further believes that the value of its collateral exceeds the amount of debt owed to Kalamata and the IRS, but not in an amount in excess of the amount of debt owed to Lionheart. Therefore, Lionheart's claim is partially secured.

29.     **Lionheart's Secured Claim:** To the extent, and only to the extent, that Lionheart has an allowed secured claim in the amount of $15,118 within the meaning of section 506(a): 1) Lionheart shall retain its lien; 2) Debtor shall make payments as provided in the revised Plan Payment Exhibit attached hereto as **Exhibit B**.

30.     **Lionheart's Unsecured Claim:** The portion of Lionheart's allowed claim which is unsecured, shall be treated as a Class 6 General Unsecured Claim.

31.     **Reporting Requirements**- Debtor shall timely file the June Monthly Operating Report ("MOR") as well as the last MOR through the effective date on or by the 20th day of the following month.

32.     **Default Provisions**- Conversion of the Bankruptcy Case to Chapter 7 shall be an additional remedy for default.

33.     **Retention of Jurisdiction**- This Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Order.

## H.     FINAL CONFIRMATION ORDER

34.     This Confirmation Order is a final order and the period in which an appeal must be filed shall commence upon the entry hereof.

IT IS SO ORDERED.

### END OF ORDER ###

PREPARED BY

**HAYWARD PLLC**

*/s/ Todd Headden*
Todd B. Headden
    Texas Bar No. 240960285
    THeadden@HaywardFirm.com
7600 Burnet Rd., Suite 530
Austin, Texas 78757
(737) 881-7100 (*telephone/facsimile*)

**COUNSEL FOR THE DEBTOR**

Exhibit A- Plan of Reorganization

**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| **In re:** | § | |
| | § | |
| **QUICK DRY CARPET CLEANING, LLC** | § | **Case No. 23-10638** |
| **D/B/A QUICK DRY RESTORATION** | § | |
| | § | **Chapter 11 (Subchapter V)** |
| **Debtor** | § | |
| | § | |

---

**AMENDED SUBCHAPTER V PLAN OF REORGANIZATION**

---

Quick Dry Carpet Cleaning, LLC submits the following *Plan of Reorganization* pursuant to Section 1189 of the Bankruptcy Code. All holders of Claims, Liens and Equity Interests are encouraged to read this Plan before voting to accept or to reject this Plan. The Debtor reserves the right to alter, amend, modify, revoke, or withdraw this Plan prior to its substantial consummation pursuant to the terms of this Plan.

**ARTICLE I.**
**Introduction and Background Information**

On August 15, 2023, Debtor Quick Dry Carpet Cleaning, LLC d/b/a Quick Dry Restoration. ("Debtor" or "Quick Dry") filed a voluntary petition for relief under subchapter V of chapter 11 of the Bankruptcy Code, commencing its above-styled bankruptcy case. The Debtor continues to operate and manage its business as "debtor in possession" pursuant to section 1184 of the Bankruptcy Code. Debtor files this plan (the "Plan") to reorganize its financial affairs and hope that the Plan, as it may hereafter be amended, modified, or restated in whole or in part, will be confirmed on a consensual basis through acceptance by all classes of creditors entitled to vote on the Plan.

Quick Dry is a Texas limited liability company formed in 2016 and serves both residential and commercial customers. Primarily, Quick Dry assists customers in need of water and mold remediation services. Additional services offered by Quick Dry include moving, restoration, and, as the name implies, carpet cleaning. Quick Dry's territory covers the greater central Texas area from Temple down to New Braunfels. Though Quick Dry has operated for less than a decade, its operations exploded and gross revenue exceeded $10 million in 2021. However, due to various contractors and employee's actions and deceit, the Debtor experienced a dramatic decline in revenue. Due to considerable cash flow constraints the Debtor took out a few merchant cash advance loans (the "MCAs") which offered temporary relief. However, the MCA's draws created new cash flow constraints and the constant drain on the bank account was too much for the company to sustain.

---

Due to those cash flow issues and the need to restructure the Debtor's operations, it filed for bankruptcy. The Plan contemplates a reorganization and continuation of the Debtor's business. In accordance with the Plan, the Debtor will satisfy certain claims from income earned through the continued operation of its business. The Plan is based on the Debtor's belief that the interests of its creditors and the estate will be best served if the Debtor is allowed to reorganize its debts as described herein, as opposed to a cessation of operations and liquidating the business.

The Debtor's Plan provides that the Debtor's projected disposable income will be used to pay Claims in accordance with the priorities of the Bankruptcy Code and the Orders of this Court.  The funds to be used for the payment of Claims or other Distributions to be made under the Plan will come from the future revenues from the Debtor's business.

In the event that one or more of the Debtor's creditor classes objects to the Plan, the Debtor will request the Court to confirm the Plan under Section 1191 of the Bankruptcy Code. The Debtor reserves the right to alter, amend, modify, revoke, or withdraw this Plan prior to its substantial consummation pursuant to the terms of this Plan.

The equity interest holders of Quick Dry will retain 100% of their interests in the Reorganized Debtor.

## ARTICLE II.
### Definitions

A. Defined Terms.

For purposes of this Plan, the following terms shall have the meanings set forth below unless the context clearly requires otherwise:

2.1     Accounting Expenses: Expenses incurred by the Debtor for the maintenance of their books and records, preparation of Debtor's financial reports, tax returns and, if applicable, the fulfillment of reporting and auditing obligations to its lenders and other parties.

2.2     Administrative Expense: Any cost or expense of administration of the Chapter 11 case under subsections 503(b) and 507(a)(2) of the Bankruptcy Code, including, without limitation, any actual and necessary expenses of preserving the estate of the Debtor, any actual and necessary expenses of operating the Debtor's business, all compensation or reimbursement of expenses to the extent allowed by the Bankruptcy Court under section 330 or 503 of the Bankruptcy Code (including any claims for substantial contribution under section 503(b)(3)(D) and any 503(b)(9) claims based upon goods received by the Debtor within 20 days of the Petition Date), and any fees or charges assessed against the Debtor's estate under section 1930, chapter 123 of title 28 of the United States Code.

2.3     Allowed: When used with respect to a Claim (other than an Administrative Expense), means a Claim (a) to the extent it is not Contested; or (b) a Contested Claim, proof of which was filed timely with the Bankruptcy Court, and (i) as to which no objection was filed by the Objection Deadline, or (ii) as to which an Objection was filed by the Objection Deadline, to the extent, if any, such Claim is ultimately allowed by a Final Order; provided however, if a Claim is to be determined in a forum other than the Bankruptcy Court, such Claim shall not become Allowed until determined by Final Order of such other forum and allowed by Final Order of the

Bankruptcy Court. "<u>Allowed</u>," when used with respect to an Administrative Expense, shall mean an Administrative Expense approved by Final Order upon notice and application to the Bankruptcy Court.

2.4　<u>Allowed Administrative Expense Claims</u>: The Allowed Claims of: (i) all administrative expenses of the Debtor's Chapter 11 case allowable under Section 503(b) of the Bankruptcy Code, including Professional Compensation and Reimbursement Claims; and (ii) all quarterly fees and other expenses payable to the United States Trustee allowable under 28 U.S.C. § 1930.

2.5　<u>Allowed Claim</u>: A claim against the Debtor: (i) in respect of which a Proof of Claim has been timely filed with the Bankruptcy Court by the Bar Date, or, with leave of the Bankruptcy Court and without objection by any party in interest, late filed, and as to which neither the Debtor nor any party in interest files an objection or as to which the claim is allowed by Final Order of the Bankruptcy Court, or (ii) scheduled in the list of creditors, as the same may have been amended, prepared and filed with the Bankruptcy Court pursuant to Bankruptcy Rule 1007(b) and not listed as disputed, contingent or unliquidated as to amount, as to which no objection to the allowance thereof has been filed, or as to which any such objection has been adjudicated and determined by an order or judgment which is no longer subject to appeal or certiorari proceeding and as to which no appeal or certiorari proceeding is pending.

2.6　<u>Allowed Priority Claim</u>: A Priority Claim to the extent that it is or has become an Allowed claim, but which, in any event, will be reduced by the amount of any offsets, credits, or refunds to which the Debtor shall be entitled on the Confirmation Date.

2.7　<u>Allowed Priority Tax Claim:</u> A Priority Tax Claim to the extent that it is or has become an Allowed claim, which in any event shall be reduced by the amount of any offsets, credits or refunds to which the Debtor shall be entitled on the Confirmation Date.

2.8　<u>Allowed Interest</u>: An equity security interest in or against the Debtor: (i) in respect of which a Proof of Interest has been timely filed with the Bankruptcy Court by the Bar Date, or, with leave of the Bankruptcy Court and without objection by any party in interest, late filed, and as to which neither the Debtor nor any party in interest files an objection or as to which the interest is allowed by Final Order of the Bankruptcy Court; or (ii) scheduled in the list of equity security holders in the Debtor, as the same may have been amended, prepared and filed with the Bankruptcy Court pursuant to Bankruptcy Rule 1007(a)(3), as to which no objection to the allowance thereof has been filed, or as to which any such objection has been adjudicated and determined by an order or judgment which is no longer subject to appeal or certiorari proceeding and as to which no appeal or certiorari proceeding is pending.

2.9　<u>Allowed Secured Claim:</u> A Secured Claim to the extent that it is allowed by Final Order in an amount equivalent to the value of any perfected collateral held to secure such claim.

2.10　<u>Allowed Unsecured Claim:</u> An Unsecured Claim against the Debtor: (i) in respect of which a Proof of Claim has been timely filed with the Bankruptcy Court by the Bar Date, or, with leave of the Bankruptcy Court and without objection by any party in interest, late filed, and as to which neither the Debtor nor any party in interest files an objection or as to which the claim is allowed by Final Order of the Bankruptcy Court; or (ii) scheduled in the list of creditors, as the same may have been amended, prepared and filed with the Bankruptcy Court pursuant to Bankruptcy Rule 1007(b) and not listed as disputed, contingent or unliquidated as to amount, as to

which no objection to the allowance thereof has been filed, or as to which any such objection has been adjudicated and determined by an order or judgment which is no longer subject to appeal or certiorari proceeding and as to which no appeal or certiorari proceeding is pending. This definition includes all claims deemed unsecured and deficiency claims pursuant to Section 506(a) of the Bankruptcy Code.

2.11    Assets includes all right, title, and interest in and to all property of every type or nature owned or claimed by the Debtor as of the Petition Date, together with all such property of every type or nature subsequently acquired by the Debtor through the Effective Date, whether real or personal, tangible or intangible, and wherever located, and including, but not limited to, property as defined in section 541 of the Bankruptcy Code. Without limiting the generality of the foregoing, this shall include all claims, causes of action or remedies to pierce the corporate veil of the Debtor, to ignore the corporate structure of the Debtor or arising under Chapter 5 of the Bankruptcy Code.

2.12    Bankruptcy Case:  In re:  Quick Dry Carpet Cleaning, LLC; Case No. 23-10638, pending in the United States Bankruptcy Court for the Western District of Texas, Austin Division.

2.13    Bankruptcy Code: The United States Bankruptcy Code, Title 11, United States Code.

2.14    Bankruptcy Court: The United States Bankruptcy Court for the Western District of Texas, Austin Division, having jurisdiction over this Chapter 11 case, or the United States District Court for the Western District of Texas acting as a court of bankruptcy.

2.15    Bankruptcy Rules: The Federal Rules of Bankruptcy Procedure.

2.16    Bar Date: The final date for filing Proofs of Claim, as directed by either the Bankruptcy Court or otherwise established pursuant to Bankruptcy Rule 3003(c)(3).

2.17    Business Day:  Any day other than Saturday, Sunday, a legal holiday, or a day on which national banking institutions in Texas are authorized or obligated by law or executive order to close.

2.18    Cash: Legal tender of the United States of America or equivalents thereof, which may be conveyed by check or wire transfer.

2.19    Claim: Either: (i) a right to payment from the Debtor and/or it's estate, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or (ii) any right to an equitable remedy for future performance if such breach gives rise to a right of payment from the Debtor and/or it's estate, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, disputed, undisputed, secured or unsecured.

2.20    Claimant:  The holder of a Claim.

2.21    Class: A category of holders of Claims or Interests which are substantially similar to the other Claims or Interests in such class.

2.22    Collateral:  Any Asset subject to a valid and enforceable Lien to secure payment of a Claim, which Lien is not subject to avoidance under the Bankruptcy Code or otherwise invalid under the Bankruptcy Code or applicable state law.

2.23    Confirmation Date: The date upon which the Bankruptcy Court shall enter the Confirmation Order, provided that, if the Confirmation Order or consummation of the Plan is

stayed or enjoined pending appeal, the Confirmation Date shall be the date that a Final Order vacating, terminating, annulling, or dissolving such stay or injunction is entered or on which such stay or injunction expires and is no longer in force or effect.

2.24    Confirmation Order: An Order of the Bankruptcy Court confirming the Plan in accordance with the provisions of Chapter 11 of the Bankruptcy Code, as such Order may be amended, modified, or supplemented.

2.25    Contested:  When used with respect to a Claim, means a Claim: a) that is listed in the Schedules of the Debtor as disputed, contingent, or unliquidated, or in the amount of $0.00 or unknown; b) that is listed in the Schedules of the Debtor as undisputed, liquidated, and not contingent and as to which a proof of Claim has been filed with the Bankruptcy Court, to the extent the proof of Claim amount exceeds the scheduled amount; c) that is not listed in the Schedules of the Debtor, but as to which a proof of Claim has been filed with the Bankruptcy Court; d) any Claim as to which an objection has been or may be timely filed and which Claim has not been Allowed by a Final Order; or (e) any Claim for which the proof of Claim is filed after the Bar Date.

2.26    Corporation Documents: The Debtor's Articles and Certificate of Incorporation, operating agreements, and partnership agreements, as the case may be, as the same may have heretofore been amended, modified, supplemented, or restated in whole or in part, and as such Corporation Documents are amended and modified by the provisions of and/or in further implementation of this Plan.

2.27    Creditor:  A "creditor," as defined in section 101(10) of the Bankruptcy Code.

2.28    Cure: The distribution of Cash, or such other property as may be agreed upon by the parties or ordered by the Bankruptcy Court, with respect to the assumption or assumption and assignment of an executory contract or unexpired lease, pursuant to Bankruptcy Code section 365(b), in an amount equal to all unpaid monetary obligations, without interest, or such other amount as may be agreed upon by the parties, under such executory contract or unexpired lease, to the extent such obligations are enforceable under the Bankruptcy Code and applicable bankruptcy law.

2.29    Debtor or Debtor-in-Possession: Debtor Quick Dry Carpet Cleaning, LLC the debtor in the above-captioned jointly administered Chapter 11 Bankruptcy Case.

2.30    Disallowed:  When used with respect to all or any part of a Claim or Interest, means that portion of a Claim or Interest to which an Objection or motion to disallow has been sustained by a Final Order or, as to a Contested Claim, any portion thereof which is not allowed by a Final Order of the Bankruptcy Court.

2.31    Distributions: The assets, property, or payments required to be distributed or paid to holders of Allowed Claims under the Plan.

2.32    Distribution Account: A bank account at a federally insured institution from which all Distributions will be made pursuant to the Plan. The Distribution Agent is the sole signatory on the Distribution Account.

2.33    Distribution Agent: The Reorganized Debtor.

2.34    Effective Date: The 15th day after the entry of an order confirming the Plan.

2.35    Quick Dry Equity Interest Holders: The Estate of Nicholas Cornwell.

2.36    Estate: The estate of the Debtor in this Bankruptcy Case created pursuant to section 541 of the Bankruptcy Code.

2.37    Executory Contracts: Any and all unexpired leases or executory contracts to which the Debtor is a party and which are subject to Section 365 of the Bankruptcy Code.

2.38    Final Order: An order of the Bankruptcy Court or any other court of competent jurisdiction which has not been reversed, stayed, modified, amended, vacated, or otherwise altered and in respect of which all applicable time periods for filing an appeal or seeking review of such order shall have expired so that such order has become final in accordance with the Bankruptcy Rules.

2.39    General Unsecured Claim:  Any Claim that is not secured by a valid and enforceable Lien against any Asset but excluding always therefrom all: (a) Administrative Expenses; (b) Priority Claims; (c) Priority Tax Claims; and (d) Secured Claims.

2.40    Insider: Any Person described in section 101(31) of the Bankruptcy Code.

2.41    Interests: Any equity or ownership interest in the Debtor including all stock of any class in the Debtor.

2.42    Lien: Any mortgage, lien, charge, security interest, encumbrance, or other security device of any kind affecting any Asset.

2.43    Objection: Includes (a) an objection to the allowance of a Claim interposed by any party entitled to do so within the applicable period of limitation fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, and (b) as to any Taxing Authority, shall include a proceeding commenced under section 505 of the Bankruptcy Code to determine the legality or amount of any tax.

2.44    Objection Deadline: Such date, if any, after the Effective Date as may be fixed by the Bankruptcy Court for the filing of objections to Claims.

2.45    Person: "Person" as defined in section 101(41) of the Bankruptcy Code.

2.46    Petition Date: August 15, 2023, the date upon which Debtor Quick Dry filed its Voluntary Petition seeking relief under Chapter 11 of the Bankruptcy Code.

2.47    Plan: This Plan of Reorganization and all addenda, exhibits, schedules, and other attachments hereto, as amended, modified, restated, supplemented, or altered in whole or in part from time to time.

2.48    Priority Claim: Any Claim entitled to priority under Sections 507(a)(2) through (6) inclusive of the Bankruptcy Code.

2.49    Priority Tax Claim:  A Claim of a governmental unit of the kind specified in subsection 507(a)(8) of the Bankruptcy Code.

2.50    Professional: Those persons retained pursuant to an order of the Bankruptcy Court in accordance with sections 327 and 1103 of the Bankruptcy Code.

2.51    Professional Compensation and Reimbursement Claim:  A Claim of a Professional for compensation and reimbursement of costs and expenses for services rendered after the Filing Date and prior to and including the Effective Date.

2.52    Proof of Claim: A written claim or form filed with the Bankruptcy Court pursuant to Bankruptcy Rule 3003.

2.53    Pro Rata Share:  The proportion that the amount an Allowed Claim (not yet paid) bears to the aggregate amount of all Allowed Claims (not yet paid) with respect to any specific Class, including Contested Claims, but not including Disallowed Claims as calculated on the Initial Distribution Date or Subsequent Distribution Date, as applicable.

2.54    Reorganized Debtor: Quick Dry on and after the Effective Date.

2.55    Schedules: The Schedules and Statement of Financial Affairs filed by the Debtor in this Bankruptcy Case, as the same may have been or may hereafter be amended, supplemented, modified, or restated in whole or in part.

2.56    Secured Claim: A Claim that is secured by a Lien which is not subject to avoidance under the Bankruptcy Code or otherwise invalid under the Bankruptcy Code or applicable state law, on property in which the Estate has an interest, or a Claim that is subject to setoff under section 553 of the Bankruptcy Code; to the extent of the value of the holder's interest in the Estates' interest in such property or to the extent of the amount subject to setoff, as applicable; as determined by a Final Order pursuant to section 506(a) of the Bankruptcy Code, or in the case of setoff, pursuant to section 553 of the Bankruptcy Code, or in either case as otherwise agreed upon in writing by the Debtor or Reorganized Debtor and the Holder of such Claim.  The amount of any Claim that exceeds the value of the Holder's interest in the Estates' interest in property or the amount subject to setoff shall be treated as a General Unsecured Claim.

2.57    Secured Creditor: A Creditor holding a Secured Claim.

2.58    Secured Tax Claim:  Any ad valorem tax Claim that arises or is deemed to have arisen on or before the Petition Date, irrespective of the date on which such Claim is assessed or due, to the extent such Claim constitutes a Secured Claim.

2.59    Tax Claim:  Any Claim for or relating to any type or form of taxes, whether assessed by the United States of America, the IRS or any Taxing Authority, including without limitation property, ad valorem, excise, sales, fuel, income or franchise taxes, and whether the tax is assessed against the Debtor as taxpayers or as holders of trust fund taxes.

2.60    Taxing Authority: Any federal, state, or local governmental unit having jurisdiction as to Debtor or their property and authority to assess, levy, and collect taxes.

2.61    Unsecured Claim:  A Claim other than an Administrative Expense, a Priority Claim, a Priority Tax Claim, or a Secured Claim.

2.62    Unsecured Creditor: A Creditor holding an Unsecured Claim.

In addition to the foregoing definitions, any term defined in the Bankruptcy Code, including Section 101 thereof, shall have the same meaning whenever used in this Plan except to the extent any such defined term is otherwise defined in this Plan or the meaning thereof would contradict or be inconsistent with such term as used herein.

2.63    Interpretation.  Unless otherwise specified, all section, article and exhibit references in this Plan are to the respective section in, article of, or exhibit to, the Plan as the same may be amended, waived, or modified from time to time.  The headings in the Plan are for convenience

and reference only and shall not limit or otherwise affect the provisions hereof.  The rules of interpretation set forth in section 102 of the Bankruptcy Code shall apply to the Plan.

2.64    Other Terms.  The words "herein," "hereof," "hereto," "hereunder," and others of similar import refer to the Plan as a whole and not to any particular section, subsection, or clause contained in the Plan. References herein to "after notice and hearing" or other similar language shall have the same meaning as in section 102(1) of the Bankruptcy Code.  Otherwise, terms used herein that are not specifically defined herein shall have the meaning ascribed to that term, if any, in the Bankruptcy Code.

2.65    Exhibits.  All Exhibits to the Plan are incorporated into the Plan by this reference and are a part of the Plan is if set forth in full herein.  Holders of Claims and Interests may obtain a copy of the Plan, once filed, by a written request sent to the following address: Hayward PLLC, 7600 Burnet Road, Ste. 530, Austin, Texas 78757, Attention: Todd B. Headden; Fax number (737) 881-7100; email: THeadden@HaywardFirm.com.

## ARTICLE III.
## Treatment of Administrative Expenses

3.1    Administrative Expenses.  All Administrative Expenses against the Debtor shall be treated as follows:

(a) Time for Filing Administrative Expenses.  The holder of any Administrative Expense, but not including a Professional Compensation and Reimbursement Claim or a liability incurred in the ordinary course of business by the Debtor, must file with the Bankruptcy Court and serve on the Reorganized Debtor and its counsel an Application seeking the Allowance of such Administrative Expense within thirty (30) days after the Effective Date.  Failure to timely and properly file an application as required herein shall result in the Administrative Expense being forever barred and discharged.

(b) Time for Filing Professional Compensation and Reimbursement Claims.  All Professionals requesting compensation or reimbursement of expenses pursuant to sections 327, 328, 330, 331, and 1103 of the Bankruptcy Code for services rendered before the Effective Date shall file and serve on the Reorganized Debtor an application for final allowance of compensation and reimbursement of expenses within sixty (60) days after the Effective Date.  Any professional fees and reimbursements of expenses incurred by the Reorganized Debtor subsequent to the Effective Date may be paid without application to the Bankruptcy Court.

(c) Allowance of Administrative Expenses.  An Administrative Expense with respect to which application has been properly filed as provided herein shall become an Allowed Administrative Expense if no objection is filed within twenty-one (21) days after its filing and service.  If an objection is filed within such twenty-one (21) day period, the Administrative Expense shall become an Allowed Administrative Expense only to the extent Allowed by a Final Order of the Bankruptcy Court.  An Administrative Expense that is (i) a Professional Compensation and Reimbursement Claim with respect to which a Fee Application has been properly filed in accordance with this Plan, or (ii) sought by a person or entity for making a substantial contribution in this Bankruptcy Case with respect to which any appropriate application has been properly filed in accordance with this plan shall become an Allowed Administrative Expense only to the extent allowed by Final Order of the Bankruptcy Court.

(d) Payment of Allowed Administrative Expenses. Administrative Claims may be paid with interest of 5% per annum in monthly payments as provided in the attached Plan Payment Projections. The first payment shall be due on the 1st day of the 1st full month following the Effective Date of the Plan and subsequent payments shall be due on the 1st day of each of the following months until paid in full. To the extent any portion of an Administrative Claim that is pending before the Court is not approved as of the Effective Date, the first payment on such Administrative Claim shall be due on the 1st day of the 1st full month following the entry of a Final Order allowing the same. Notwithstanding anything herein to the contrary, the Reorganized Debtor are authorized to pay in the ordinary course any Administrative Expense representing a liability incurred in the ordinary course of business by the Debtor.

3.2    Trustee's Fees.  Because this case is filed under Subchapter V of Chapter 11 of the United States Bankruptcy Code, the quarterly trustee's fees pursuant to 28 U.S.C. §1930(a)(6) do not apply. Compensation awarded to Mr. Terry as the Subchapter V trustee is subject to an order of the court and will be paid as an administrative expense claim.

## ARTICLE IV.
## Classification of Claims and Interests

For purposes of this Plan, the Claims of Creditors and the Interests of equity holders are divided into the following Classes:

a.  Administrative Claims. Allowed Claims that are Administrative Expenses pursuant to Section 507(a)(2) of the Bankruptcy Code. Administrative Claims consist of expenses incurred during the chapter 11 case, which are approved by the Bankruptcy Court. Most Administrative Expense Claims consist of claims by professionals employed by the Debtor in the Bankruptcy Case, which must be approved by the Bankruptcy Court. Other Administrative Expense Claims are claims arising post-petition, which may have not been paid.

b.  Class 1 Claims: Allowed Priority Claims. The Allowed Priority Claims of the Internal Revenue Service, the Texas Workforce Commission, and the Texas Comptroller of Public Accounts that are entitled to priority treatment under Bankruptcy Code sections 507(a)(8).  Any Claim or demand for a penalty relating to the Internal Revenue Service's Priority Tax Claim other than a penalty of the type specified in § 507(a)(8)(G) of the Bankruptcy Code shall be included in the class of, and shall be treated as, a General Unsecured Claim. Any Unsecured Claim of the Internal Revenue Service not entitled to Priority under § 507(a)(8) of the Bankruptcy Code is included in the class of, and shall be treated as, a General Unsecured Claim.

c.  Class 2 Claims: Allowed IRS Secured Claim. Allowed Secured Claim of Taxing Authorities or Allowed Claims of Taxing Authorities, *i.e. Internal Revenue Service*, that are entitled to priority treatment under Bankruptcy Code sections 507(a)(8) other than the Internal Revenue Service.  Any Claim or demand for a penalty relating to any Priority or Secured Tax Claim other than a penalty of the type specified in § 507(a)(8)(G) of the Bankruptcy Code shall be included in the class of, and shall be treated as, a General Unsecured Claim. Unsecured Claims of Taxing Authorities not

entitled to Priority under § 507(a)(8) of the Bankruptcy Code are included in the class of, and shall be treated as, General Unsecured Claims.

d.  <u>Class 3 Claims: Allowed Secured Claim of Kalamata Loans.</u>  The Allowed Secured Claims of Kalamata Loans evidenced by Proof of Claim number 3. The claim is, pursuant to § 506(a), being allowed to the extent of its secured value, or $45,406.53.

e.  Class 4 Claims:  <u>Secured Claim of AmeriCredit Financial Services, Inc. dba GM Financial</u>. The Allowed Secured Claim of AmeriCredit Financial Services, evidenced by Proof of Claim number 18. The claim is for the purchase money security interest in a 2021 Chevy Silverado light duty pickup truck and will be paid in monthly installments.

<u>Secured Claims of Ally Bank</u>. The Allowed Secured Claims of Ally Bank, specifically claims 11, 12, 13, 14, 15, 16, 17, and 20 will be paid in regular monthly installments according to the monthly automobile payments provided for in Exhibit A.

f.  <u>Class 5 Claim: Priority Claim of Penny Lane, DIP Lender</u>. The Allowed Priority Claim of Penny Lane as permitted in the Court's interim and final orders approving Debtor in Possession Financing, Docket No. 100 & 109. The Claim of $26,000 will be paid in monthly installments.

g.  <u>Class 6 Claims: Allowed General Unsecured Claims.</u> All Allowed Unsecured Claims, including Allowed Claims arising from the rejection of any Executory Contract, the Unsecured portion of any Claim of a Secured Creditor pursuant to §506(a), and penalties related to a Tax Claim other than a penalty of the type specified in § 507(a)(8)(G) of the Bankruptcy Code.

h.  <u>Class 6 Interests: Quick Dry Equity Holders.</u>  The Allowed Interests of the Quick Dry Equity Holders.

## ARTICLE V.
## <u>Impairment of Classes</u>

Classes 1, 2, 3, 4, 5, and 6 Claims are each impaired by the Plan, as such impairment is determined and defined in Section 1124 of the Bankruptcy Code.

## ARTICLE VI.
## <u>Treatment of Claims and Interests</u>

The holders of Claims and Interests in the Classes established by this Plan shall receive the following treatment in full satisfaction of such Claims or Interests:

| Class | Impairment | Treatment |
|---|---|---|
| Administrative Claims | N/A | Subchapter V Trustee, Mr. Eric Terry. Debtor will pay Mr. Terry within 2 weeks of the entry of an order approving his fees after the application of any fees held as a court-approved security deposit.<br><br>Hayward PLLC The Debtor will pay any Allowed Administrative Expenses of Hayward PLLC remaining owing after its application of any funds held in retainer as follows:<br><br>Beginning fifteen (15) days after the date on which the Bankruptcy Court enters an order allowing such Administrative Expense, the Debtor shall make monthly payments to Hayward PLLC in the amounts identified in the Exhibit B, Plan Payment Schedule until the Administrative Expense Claim is paid in full.<br><br>Penny Lane. The allowed administrative expense claim of Penny Lane is treated in Class 5 below. |
| Class 1 Claim: Allowed Priority Claims. | Impaired | Priority Unsecured Claims shall be paid in accordance with 11 U.S.C. § 1129(a)(9)(c) with the first payment due and payable on May 1, 2024. The Reorganized Debtor, in its sole discretion, will either pay such Claims: (i) on the Effective Date; or (ii) when such taxes become due and payable under the laws of the applicable taxing jurisdiction; or (iii) in accordance with the Plan payments set forth in Exhibit B.<br><br>All Tax Claims shall remain subject to section 505 of the Bankruptcy Code.  The Reorganized Debtor shall retain the right to a determination of the amount or legality of any tax pursuant to section 505 of the Bankruptcy Code as to any Tax Claim.  The Reorganized Debtor may seek relief pursuant to section 505 of the Bankruptcy Code as a part of, and in conjunction with, any objection to any Tax Claim.<br><br>With respect to Allowed Priority Tax Claims, the interest rate paid upon such Claims shall be the rate of interest determined under applicable non-bankruptcy law.<br><br>Post-petition taxes will be paid when such taxes become due and payable under the laws of the applicable taxing jurisdiction.<br><br>IRS- The Allowed Priority Claim of the Internal Revenue Service shall be paid through sixty monthly payments including applicable interest with a value, as of the Effective Date, equal to the Allowed Claim.  With respect to Allowed Priority Tax Claim of the Internal Revenue Service, the interest rate paid upon such Claim shall be the rate of interest determined under applicable non-bankruptcy law.<br><br>All payments will be sent to: IRS, 300 E 8th Street, M/S 5026 AUS, Austin, Texas 78701, attn: Minerva Garcia. |

Texas Workforce Commission- The Allowed Priority Claim of the Texas Workforce Commission shall be paid through monthly payments as set forth in Exhibit B.

Texas Comptroller of Public Accounts- The Allowed Priority Claim of the Texas Comptroller of Public Accounts shall be paid through monthly payments as set forth in Exhibit B.

If the Reorganized Debtor fails to make any plan payment to the Priority Creditors, fails to make any deposits of any currently accruing employment or sales tax liability to the Priority Creditors, or fails to make payment of any tax to the Priority Creditors within 10 days of the due date of such deposit or payment, or if the Reorganized Debtor fails to file any required federal or state tax return by the due date of such return, then the United States or the State of Texas may send written notice to the Reorganized Debtor and its counsel that the Reorganized Debtor is in default of the Plan. Failure to declare a default does not constitute a waiver by the Priority Creditors of the right to declare that the Reorganized Debtor is in default.

If the default is not cured within fourteen (14) days of such notice, then the Priority Creditors may collect any unpaid liabilities through the administrative collection provisions of the Internal Revenue Code or other applicable laws. The Priority Creditors shall only be required to send two notices of default, and upon the third event of Default, the Priority Creditors may proceed to collect on all amounts owed without recourse to the Bankruptcy Court and without further notice to the Reorganized Debtor. The collection statute expiration date will be extended from the Petition Date until substantial default under the Plan.

Upon an uncured default under the Plan, the administrative collection powers and the rights of the Priority Creditors shall be reinstated as they existed prior to the filing of the bankruptcy petition, including, but not limited to, the assessment of taxes, the filing of a notice of Federal (or state) tax lien and the powers of levy, seizure, and as provided under the Internal Revenue Code.

If the Priority Creditors declare the Reorganized Debtor to be in default of its obligations under the Plan and such default is not cured as provided herein, then the entire imposed liability, together with any unpaid current liabilities, may become due and payable immediately upon written demand to the Reorganized Debtor.

The Internal Revenue Service shall not be bound by any release provisions in the Plan that would release any liability of the responsible persons of the Reorganized Debtor to the IRS. The Internal Revenue Service may take such actions as it deems necessary to assess any liability that may be due and owing by the responsible persons of the Reorganized Debtor to the Internal Revenue Service, but the Internal Revenue Service shall not take action to actually collect from such persons unless and until there is an uncured default under the Plan and as set forth above.

| Class 2 Claim: Allowed Secured Claim of the IRS. | Impaired | All Tax Claims shall remain subject to section 505 of the Bankruptcy Code. The Reorganized Debtor shall retain the right to a determination of the amount or legality of any tax pursuant to section 505 of the Bankruptcy Code as to any Tax Claim. The Reorganized Debtor may seek relief pursuant to section 505 of the Bankruptcy Code as a part of, and in conjunction with, any objection to any Tax Claim. |
|---|---|---|
| | | With respect to Allowed Secured the interest rate paid upon such Claims shall be the rate of interest determined under applicable non-bankruptcy law. |
| | | Post-petition taxes will be paid when such taxes become due and payable under the laws of the applicable taxing jurisdiction. |
| | | If the Reorganized Debtor fails to make any plan payment to the IRS, fails to make any deposits of any currently accruing employment or sales tax liability to the IRS, or fails to make payment of any tax to the IRS within 10 days of the due date of such deposit or payment, or if the Reorganized Debtor fails to file any required federal or state tax return by the due date of such return, then the United States may send written notice to the Reorganized Debtor and its counsel that the Reorganized Debtor is in default of the Plan. Failure to declare a default does not constitute a waiver by the Priority Creditors of the right to declare that the Reorganized Debtor is in default. |
| | | If the default is not cured within fourteen (14) days of such notice, then the IRS may collect any unpaid liabilities through the administrative collection provisions of the Internal Revenue Code. The IRS shall only be required to send two notices of default, and upon the third event of Default, the IRS may proceed to collect on all amounts owed without recourse to the Bankruptcy Court and without further notice to the Reorganized Debtor. The collection statute expiration date will be extended from the Petition Date until substantial default under the Plan. |
| | | Upon an uncured default under the Plan, the administrative collection powers and the rights of the IRS shall be reinstated as they existed prior to the filing of the bankruptcy petition, including, but not limited to, the assessment of taxes, the filing of a notice of Federal (or state) tax lien and the powers of levy, seizure, and as provided under the Internal Revenue Code. |
| | | If the IRS declares the Reorganized Debtor to be in default of its obligations under the Plan and such default is not cured as provided herein, then the entire imposed liability, together with any unpaid current liabilities, may become due and payable immediately upon written demand to the Reorganized Debtor. |
| | | The Internal Revenue Service shall not be bound by any release provisions in the Plan that would release any liability of the responsible persons of the Reorganized Debtor to the IRS. The Internal Revenue Service may take such actions as it deems necessary to assess any liability that may be due and owing by the responsible persons of the Reorganized Debtor to the Internal Revenue Service, but the Internal Revenue Service |

| | | |
|---|---|---|
| | | shall not take action to actually collect from such persons unless and until there is an uncured default under the Plan and as set forth above. |
| Class 3 Claims: Allowed Secured Claim of Kalamata Loans or Kalamata Capital Group<br><br>Claim No. 3: $45,406.53 | Impaired | Kalamata Capital Group, LLC aka Kalamata Loans ("Kalamata") Filed Secured Claim of $45,406.53 shall be paid in monthly payments ending upon Kalamata's receipt in full of the Allowed Secured Claim amount according to the projections listed in Exhibit B.<br><br>The first monthly payment will be due and payable on the first Business Day of the first month that is more than 30 days after the Effective Date and on the first Business Day of each respective month thereafter. To the extent that the Debtor misses any payment due to Kalamata on account of its Allowed Secured Claim as provided herein, Kalamata shall send written notice of such missed payment to the Debtor and its counsel, and the Debtor shall have five business days from the date of its receipt of such notice to make such missed payment before a default may be deemed to have occurred hereunder.<br><br>Any perfected liens or security interests securing Kalamata's Allowed Secured Claim will be preserved and continued. Kalamata shall, upon payment and satisfaction of its Allowed Secured Claim in full as provided herein, execute and file a release of the filed UCC-1 Financing Statement in a form satisfactory to the Reorganized Debtor and deliver same to the Reorganized Debtor or its designee.<br><br>The written agreements by and between Kalamata and the Debtor will remain the same, except to the extent that the terms therein are modified by this Plan, and such agreements will be deemed to be modified to comport with this Plan. All defaults and events of default existing as of the Petition Date and as of the Effective Date shall be deemed cured and waived, and all amounts owed will be decelerated and paid in accordance with the terms of this Plan. Except as provided by this Plan, no default interest, late charges, or other penalties arising or accruing after the Petition Date shall be required to be paid to Kalamata.<br><br>Notwithstanding anything to the contrary contained herein, the Reorganized Debtor shall not be liable to Kalamata for any legal fees, costs, expenses or other charges Kalamata incurs from and after the Effective Date on account of its efforts to enforce any other guarantees previously delivered to Kalamata in connection with its Allowed Secured Claim.<br><br>Nothing herein shall prohibit the Reorganized Debtor from refinancing, selling, or otherwise disposing of the collateral at any time, provided that the remaining unpaid portion of Kalamata's Allowed Secured Claim shall be paid in full at such time. No prepayment penalty will be due with respect to any prepayment of Kalamata's Allowed Secured Claim. |
| Class 4 Claims: Allowed Secured Claim of AmeriCredit | Impaired | AmeriCredit Financial Services, Inc. d/b/a/ GM Financial ("GM Financial") filed a secured claim in the amount of $18,083.57 and shall be paid in monthly payments ending upon GM Financial's receipt in full |

| Financial Services and Ally Financial | | of the Allowed Secured Claim amount according to the projections listed in **Exhibit B**.<br><br>Ally Financial filed secured claims for numerous vehicles. Apart from those being rejected below, the Debtor wishes to retain the vehicles provided for in Allowed Claims 11, 12, 13, 14, 15, 16, 17, and 20. Ally Financial shall receive monthly payments ending upon Ally's receipt in full of the Allowed Secured Claims according to the monthly installments provided for in **Exhibit A**. |
| Class 5 Claims: Allowed Superpriority Claim of Penny Lane, DIP Lender | Impaired | Allowed Superpriority Claim of Penny Lane: Ms. Lane's claim of $26,000 shall accrue interest at 4% per annum and she shall be paid in monthly payments according to the projections listed in Exhibit B. |
| Class 6 – General Unsecured Creditors | Impaired | Allowed General Unsecured Claims, including deficiency claims, shall receive a pro-rata share of $0, which amount shall be paid in monthly payments in the projections listed in Exhibit B. |
| Class 7- Quick Dry Equity Interest Holders | N/A | The Allowed Interests of the Equity Holders shall retain their respective Interests in the Reorganized Debtor |

## ARTICLE VII.
## Acceptance or Rejection of this Plan

7.1    Classes Entitled to Vote.  Each impaired Class of Claims that will receive or retain property or any interest in property under this Plan shall be entitled to vote to accept or reject this Plan.

7.2    Acceptance by Impaired Classes of Claims.  An impaired Class of Claims shall have accepted this Plan if (a) the holders (other than any holder designated under Bankruptcy Code § 1126(e)) of at least two-thirds in dollar amount of the Allowed Claims actually voting in such Class have voted to accept this Plan and (ii) the holders (other than any holder designated under Bankruptcy Code § 1126(e)) of more than one-half in number of the Allowed Claims actually voting in such Class have voted to accept this Plan.

7.3    Cramdown.  If each impaired Class of Claims does not accept this Plan, the Debtor requests Confirmation of this Plan under Bankruptcy Code § 1191. The Debtor reserves the right to modify this Plan to the extent, if any, that Confirmation pursuant to Bankruptcy Code § 1191 requires modification or for any other reason in its discretion.

## ARTICLE VIII.
## Liquidation Analysis

The Court must find that all creditors and equity interest holders will receive at least as much under the Plan as they would receive in a chapter 7 liquidation process. Debtor's liquidation analysis is attached to the Plan as **Exhibit C**.  The liquidation analysis assumes conversion of the Debtor's Chapter 11 case to a chapter 7 liquidation case on November 13, 2023, wherein it is

assumed that the United States Trustee would appoint a chapter 7 trustee to liquidate the Bankruptcy Estate.

The liquidation analysis assumes the value that a chapter 7 trustee would obtain for the property of the Debtor in a hypothetical liquidation and reflects the Debtor's estimates on the potential recoveries for the different categories of property. The administrative expenses assumed therein consist of claims entitled to administrative expense priority under section 503 of the Bankruptcy Code, including the chapter 7 trustee's statutory fees and professional expenses in liquidating the estate.

Further, Debtor's true value is as a going-concern business. The Debtor believes that liquidation under Chapter 7 would result in lower distributions to the Debtor's secured and priority claimants and no distribution to the unsecured creditors. Some of the Debtor's secured creditors would have the right to exercise their rights as a secured creditor to repossess and foreclose upon the Debtor's assets, and such creditors could hold significant deficiency claims upon any such repossession or foreclosure. With respect to any remaining assets, and if a receiver or trustee were appointed to supervise the liquidation of the Debtor's assets, there would be significant costs associated with such liquidation. It is unlikely that the liquidation of Debtor's assets would be sufficient to enable a hypothetical trustee to make any significant distribution to unsecured creditors or deficiency claims of secured creditors because Administrative and Priority Claims, Secured Tax Claims, and the Secured Claims of the Debtor's equipment lenders would consume all such proceeds.

As shown in the attached Liquidation Analysis, the conversion to Chapter 7 would give rise to additional administrative expenses involved in the appointment of a trustee and attorneys and other professionals to assist such trustee. If a receiver or trustee were appointed to supervise the liquidation of the Debtor's assets, there would be significant costs associated with such liquidation, and such costs would increase due to fees and charges for such persons. Such property would be insufficient to enable the Debtor or a Trustee to make any distribution to unsecured creditors because Secured Claims, Administrative Claims, and Priority Claims would consume all of such proceeds.

Priority Claims May not be paid in full in a liquidation scenario. The Plan provides for payment in full of all Secured, Administrative, and Priority Claims and therefore is in the best interests of creditors.

## ARTICLE IX.
## Means of Implementation

8.1     Conditions Precedent to the Effective Date. The Plan shall not become effective unless and until the following condition shall have been satisfied or waived by the Debtor, in the Debtor's sole and absolute discretion: the Confirmation Order, in a form and substance reasonably acceptable to the Debtor, shall have become a Final Order and shall, among other things (i) confirm this Plan, (ii) find that the Debtor and their respective current employees, officers, and directors, agents, and professionals have acted in good faith and in compliance with the applicable provisions of the Bankruptcy Code as set forth in Bankruptcy Code § 1125(e), and (iii) find that the Debtor is authorized to take all actions and consummate all transactions contemplated under this Plan.

8.2     Funding.  The funds to be used for the payment of Claims or other Distributions to be made under the Plan will come from current cash on hand of the Debtor and future revenues of the Debtor. A detailed analysis of the Debtor's projected income and expenses is set forth on the Projected Proforma attached as **Exhibit A**. The Debtor's financial projections show that the Debtor will have sufficient projected disposable income (as defined by § 1191(d) of the Bankruptcy Code) for the duration described in § 1191(c)(2).

8.3     Distribution Agent: The Distribution Agent shall be the Reorganized Debtor. **The Reorganized Debtor, and not the Subchapter V trustee, shall make all payments to creditors under the Plan, whether the Plan is confirmed under § 1191(a) or § 1191(b) in order to save on administrative costs**.  The Distribution Agent will serve until all distributions required under the Plan have been made, whereupon the Distribution Account will be closed, and no further actions are required to consummate the Plan. Appointment of the Distribution Agent herein is in a manner consistent with the interests of the holders of Claims and Interests and public policy. All documents, writings, authorizations or matters requiring the consent of, execution by, or signature of the Debtor or Reorganized Debtor may be consented to, executed by, or signed by the Distribution Agent, whose signature, execution, or consent is hereby deemed authorized, enforceable and binding without further order of the Court. A certified copy of the Confirmation Order may be filed in any deed record, government or public record keeping place as authentication of the signature and authority of the Distribution Agent to consent to, execute, or sign any writing or document of the Debtor and Reorganized Debtor herein.

8.4     Vesting of Assets.  As of the Effective Date, all Assets owned by Debtor Quick Dry shall be transferred to, and vested in, the Reorganized Debtor free and clear of all Liens and Claims and all rights, title and interests, except as expressly set forth in this Plan. *In the instance that the case converts to chapter 7 post confirmation, the property of the debtor shall revest into the chapter 7 estate.*

8.5     Amendments to Corporate Documents.  As of the Effective Date, without the need for any additional approval or authorization, the organizational Corporation Documents may be amended and revised to the extent necessary to reflect the transactions contemplated by this Plan.

8.6     Assumption of Allowed Claims.  The Reorganized Debtor hereby assumes the liability for and obligation to perform and make all Distributions or payments on account of all Allowed Claims in the manner provided in this Plan.

8.7     Attorneys' Fees and Costs.  To the extent any holder of a Secured Claim asserts a right to attorneys' fees and costs pursuant to section 506(b) of the Bankruptcy Code, unless otherwise agreed between the Debtor or Reorganized Debtor and such Secured Creditor, the allowance of such fees and expenses shall be handled as set forth in this paragraph.  Within twenty-one (21) days after the Effective Date, the Secured Creditor shall file an application with the Bankruptcy Court for allowance of such fees and expenses.  Within twenty-one (21) days after such an application is filed, the Reorganized Debtor may file any objections thereto, and the Secured Creditor shall file any response within fourteen (14) days thereafter.  If the Secured Creditor and the Reorganized Debtor are unable to reach agreement, the matter shall then be submitted to the Bankruptcy Court for determination on no less than twenty-one (21) days' notice of the hearing.

8.8     Post-Petition Taxes and Insurance.  Post-petition property taxes and insurance shall be paid by the Reorganized Debtor in the ordinary course of their business as such taxes and insurance become due and payable.

8.9     Officers and Directors. On and after the Effective Date, the officers and directors of the Reorganized Debtor shall be as follows:

Reorganized Debtor:

Penny Lane- Manager and President

## ARTICLE X.
## Procedures for Resolving and Treating Contested and Contingent Claims

9.1     Time for Filing Claims: All claimants (except for Creditors whose Claims are Administrative Expense Claims or whose Claims were scheduled as undisputed, liquidated, and non-contingent in the Schedules) shall be required to file a Proof of Claim prior to the Bar Date in order to participate in any Distribution made under this Plan or to have such Claim allowed by the Bankruptcy Court. Any Claim asserted pursuant to Section 507(a)(1) other than Claims made pursuant to Section 330 of the Bankruptcy Code, shall be filed within ten (10) days prior to the first date scheduled by the Bankruptcy Court for commencement of the hearing to be held on the Confirmation of the Plan.

9.2     Objection Deadline.  All objections to Claims shall be served and filed by the Objection Date, if one is set by the Bankruptcy Court, although nothing contained herein shall require the fixing of an Objection Deadline; provided, however, the Objection Date shall not apply to Claims which are not reflected in the claims register, including any alleged informal proofs of claim. If an Objection Deadline is fixed, it may be extended one or more times by the Bankruptcy Court pursuant to a motion filed on or before the then applicable Objection Date. Any Contested Claims may be litigated to Final Order. The Reorganized Debtor may compromise and settle any Contested Claim without the necessity of any further notice or approval of the Bankruptcy Court. Bankruptcy Rule 9019 shall not apply to any settlement of a Contested Claim after the Effective Date.

9.3     Responsibility for Objecting to Claims.  The Reorganized Debtor shall have the sole right and responsibility for objecting to the allowance of Claims following the Effective Date.

9.4     Distributions on Account of Contested Claims.  No distribution shall be made on account of a Contested Claim until Allowed. Until such time as a contingent Claim becomes fixed and absolute by a Final Order allowing such Claim, such Claim shall be treated as a Contested Claim for purposes of estimates, allocations, and distributions under the Plan. Any contingent right to contribution or reimbursement shall continue to be subject to section 502(e) of the Bankruptcy Code.

9.5     No Waiver of Right to Object.  Except as expressly provided in this Plan, nothing contained in this Plan, or the Confirmation Order shall waive, relinquish, release or impair the Reorganized Debtor's right to object to any Claim.

9.6     Rights under Section 505.  All Tax Claims shall remain subject to section 505 of the Bankruptcy Code. The Reorganized Debtor shall retain the right to a determination of the amount or legality of any tax pursuant to section 505 of the Bankruptcy Code as to any Tax Claim.

The Reorganized Debtor may seek relief pursuant to section 505 of the Bankruptcy Code as a part of, and in conjunction with, any objection to any Tax Claim.

9.7     Allowance of Contested Claims.  This section shall apply to all Contested Claims. Nothing contained in the Plan or Confirmation Order shall change, waive or alter any requirement under applicable law that the holder of a Contested Claim must file a timely Proof of Claim, and the Claim of any such Contested Creditor who is required to file a Proof of Claim and fails to do so shall be discharged and disallowed and shall receive no distribution through the Plan. The adjudication and liquidation of Contested Claims is a determination and adjustment of the debtor/creditor relationship and is therefore an exercise of the Bankruptcy Court's equitable power to which the legal right of trial by jury is inapplicable.  The holder of any Contested Claim shall not have a right to trial by jury before the Bankruptcy Court in respect of any such Claim.  The exclusive venue for any Contested Proceeding shall be in the Bankruptcy Court or a court of competent jurisdiction located in Travis County, Texas.  Contested Claims shall each be determined separately, except as otherwise ordered by the Bankruptcy Court.  Texas Rule of Civil Procedure 42 and Federal Rule of Civil Procedure 23 shall not apply to any Contested Proceeding. The Reorganized Debtor shall retain all rights of removal to federal court as to any Contested Proceeding.

9.8     Allowance of Certain Claims.   All Contested Claims shall be liquidated and determined as follows:

(a) Application of Adversary Proceeding Rules.  Unless otherwise ordered by the Bankruptcy Court or provided by the Bankruptcy Rules, any objection to a Contested Claim shall be treated as a contested proceeding subject to Bankruptcy Rule 9014.  However, any party may move the Bankruptcy Court to apply the rules applicable to adversary proceedings to any Claim Objection.  The Reorganized Debtor, however, may at their election, make and pursue any Objection to a Claim in the form of an adversary proceeding.

(b) Scheduling Order.  Unless otherwise ordered by the Bankruptcy Court, or if the Objection is pursued as an adversary proceeding, a scheduling order shall be entered as to each Objection to a Claim.  The Debtor shall tender a proposed scheduling order with each Objection and include a request for a scheduling conference for the entry of a scheduling order.  The scheduling order may include (i) discovery cut-off, (ii) deadlines to amend pleadings, (iii) deadlines for designation of and objections to experts, (iv) deadlines to exchange exhibit and witness lists and for objections to the same, and (v) such other matters as may be appropriate.

9.9     Substantial Consummation.  All distributions of any kind made to any of the Creditors after Substantial Consummation and any and all other actions taken under this Plan after Substantial Consummation shall not be subject to relief, reversal, or modification by any court unless the implementation of the Confirmation Order is stayed by an order granted under Bankruptcy Rule 8005.

9.10     Retention of Claims and Causes of Action.  Except to the extent explicitly released in this Plan, all causes of action, rights of setoff and other legal and equitable defenses of the Debtor and its estate are preserved for the benefit of the Reorganized Debtor.  No Person may rely on the absence of a specific reference in the Plan as to any cause of action against them as an indication that the Reorganized Debtor will not pursue a cause of action against them.  Such causes of action include, but are not limited to, (i) all rights, claims, and causes of action pursuant to Sections 502, 510, 544, 545, and 546 of the Code, all preference claims under Section 547 of the

Code, all fraudulent transfer claims pursuant to Section 548 of the Bankruptcy Code and applicable state law, all claims relating to post-petition transactions under Section 549 of the Code, and all claims recoverable under Section 550, (ii) all rights of offset or recoupment and all counterclaims against any Claimant; and (iii) those causes of action listed in the Schedules. For the avoidance of doubt, Debtor explicitly retains all preference claims under Section 547 of the Code against Kalamata Capital Group, LLC.

   9.11   <u>Default Provisions:</u> Unless otherwise specifically stated for a particular claim or class of claims, the following default provisions apply. if the Debtor fails to make a payment to a creditor pursuant to the terms of the Plan by the fifteenth day of the month in which such payment is due, then such a failure shall constitute an event of default. If there is an event of default, a Creditor must deliver to the Debtor a notice of default. Upon receipt of the notice of default, the Debtor shall have 14 days to cure such default. A Creditor may, upon the occurrence of a third event of default and after three such notices of default, whether such defaults are cured or uncured, accelerate its Allowed Claim(s) and declare the outstanding amount of such Claim(s) to be immediately due and owing and pursue any and all available state and federal rights and remedies.

   If the reorganized Debtors fail to cure an Event of Default as to tax payments within ten (10) calendar days after service of written notice of default from the Comptroller, the Comptroller may (a) enforce the entire amount of its claim, (b) exercise all rights and remedies under applicable nonbankruptcy law, and (c) seek such relief as may be appropriate in this court. Notice of the default shall be served by first class mail upon the Debtor at 7917 Aspen Highlands Dr. Austin, TX 78746, Attn: President, and upon Debtor's attorney at: Hayward, PLLC, 7600 Burnet Rd., Suite 530, Austin, TX 78757, Attn: Todd Headden.; THeadden@HaywardFirm.com.

   The Debtors shall be allowed to cure up to two (2) defaults. Upon a third default, the Comptroller, at its option, may declare the default non-curable and proceed to collect the remainder of the debt.

   **Conversion of the Bankruptcy Cases to Chapter 7 shall be an additional remedy for default**.

## ARTICLE XI.
## <u>Retention of Jurisdiction</u>

   Under sections 105(a) and 1142 of the Bankruptcy Code, and notwithstanding entry of the Confirmation Order and occurrence of the Effective Date, and except as otherwise ordered by the Bankruptcy Court, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of, and related to, this Bankruptcy Case and the Plan to the fullest extent permitted by law, including, among other things, jurisdiction to:

   (a)   allow, disallow, determine, liquidate, classify, estimate, or establish the priority, secured, or unsecured status of any Claim not otherwise Allowed under the Plan, including the resolution of any request for payment of any Administrative Expense Claim and the resolution of any objections to the allowance or priority of Claims;

   (b)   hear and determine all applications for compensation and reimbursement of expenses of Professionals under the Plan or under sections 327, 328, 330, 331, 503(b), and 1129(a)(4) of the Bankruptcy Code;

(c)     hear and determine all matters with respect to the assumption or rejection of any executory contract or unexpired lease to which the Debtor is a party or with respect to which the Debtor may be liable, including, if necessary, the nature or amount of any required Cure or the liquidation or allowance of any Claims arising there from;

(d)     effectuate performance of and payments under the provisions of the Plan and enforce remedies upon any default under the Plan;

(e)     hear and determine any and all adversary proceedings, motions, applications, and contested or litigated matters arising out of, under, or related to, the Bankruptcy Cases, or the causes of action retained by the Debtor in Section 9.10 of this Plan;

(f)     enter such orders as may be necessary or appropriate to execute, enforce, implement, or consummate the provisions of the Plan and all contracts, instruments, releases, and other agreements or documents created in connection with the Plan or the Confirmation Order;

(g)     hear and determine disputes arising in connection with the interpretation, implementation, consummation, or enforcement of the Plan, including disputes arising under agreements, documents, or instruments executed in connection with the Plan;

(h)     consider any modifications of the Plan, cure any defect or omission, or reconcile any inconsistency in the Plan or in any order of the Bankruptcy Court, including, without limitation, the Confirmation Order;

(i)     issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Person with the implementation, consummation, or enforcement of the Plan or the Confirmation Order;

(j)     enter and implement such orders as may be necessary or appropriate if the Confirmation Order is for any reason reversed, stayed, revoked, modified, or vacated;

(k)     hear and determine any matters arising in connection with or relating to the Plan, the Confirmation Order, or any contract, instrument, release, or other agreement or document created in connection with the Plan or the Confirmation Order;

(l)     enforce, interpret, and determine any disputes arising in connection with any stipulations, orders, judgments, injunctions, releases, exculpations, indemnifications, and rulings entered in connection with the Bankruptcy Cases (whether or not the Bankruptcy Cases have been closed);

(m)     except as otherwise limited herein, recover all Assets of the Debtor and property of the Estates, wherever located;

(n)     hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

(o)     hear and determine all disputes involving the existence, nature, or scope of the Debtor's discharge;

(p)     hear and determine such other matters as may be provided in the Confirmation Order or as may be authorized under, or not inconsistent with, provisions of the Bankruptcy Code; and

(q)     enter a final decree closing the Bankruptcy Cases.

## ARTICLE XII.
## Executory Contracts

11.1    Assumption of Executory Contracts.  The Plan shall constitute a motion to assume the following executory contracts and unexpired leases of the Debtor and the vesting of such contracts in the Reorganized Debtor as of the Effective Date, including but not limited to:

Verizon Wireless
SalesForce
Google Marketing
Slack
CompCam
QuickBooks
Dispatch
Monday
Docusign
Simplii

**Rejection of Executory Contracts**. The Plan also shall constitute a motion to reject all executory contracts of the Debtor listed below pursuant to section 365(a) of the Bankruptcy Code:

Ally Financial re Chevy Express Cargo Van (VIN#6185)
Ally Financial re Chevy Colorado (VIN#2025)
Ally Financial re Chevy Colorado (VIN#2024)

Except as otherwise set by Order of the Bankruptcy Court, any objection to the assumption and vesting of, or the proposed cure amount under, the executory contracts and unexpired leases listed above must be made as an objection to confirmation of this Plan. If no objection to the assumption and vesting of, or the proposed cure amount under, any particular executory contract and unexpired lease listed above is timely served, an Order (which may be Confirmation Order) that approves the assumption and vesting of, and the proposed cure amount under, each respective executory contract and unexpired lease listed above may be entered by the Bankruptcy Court.  If any such objections are filed and timely served, a hearing with respect to the assumption and vesting or cure of any of executory contract and unexpired lease listed above, and the objections thereto, shall be scheduled by the Bankruptcy Court, which hearing may, but is not required to, coincide with the Confirmation Hearing.

11.2    Notice of Assumption.  As soon as reasonably practicable, the Debtor shall serve a notice to parties to the executory contracts and unexpired leases listed above whose agreements

may be assumed by the Debtor and vested in the Reorganized Debtor under this Plan. That notice shall include the proposed cure payment to be paid to the non-Debtor parties or any other third parties necessary to cure all defaults and arrearages under the executory contracts and unexpired leases listed above and the means by which such parties may receive information regarding the providing of adequate assurance.

11.3    <u>Approval of Assumption or Rejection of Executory Contracts and Unexpired Leases</u>. Entry of the Confirmation Order shall constitute the approval, pursuant to Sections 365(a) and 1123(b)(2) of the Bankruptcy Code, of the (i) assumption of the executory contracts and unexpired leases to be assumed pursuant to this Article of the Plan, and (ii) rejection of the executory contracts and unexpired leases to be rejected pursuant to this Article of the Plan.

11.4    <u>Effect of Assumption</u>.  If the Bankruptcy Court approves the assumption and vesting of one or more executory contracts and unexpired leases listed above, each executory contract and unexpired lease listed above shall be deemed an assumed contract, and such contracts shall be assumed by the Debtor effective as of the Effective Date, and they shall vest in the Reorganized Debtor on the Effective Date.  In the event of a dispute concerning the assumption of an executory contract and unexpired lease listed above, the dispute shall be resolved by the Bankruptcy Court.  To the extent that a counterparty to an executory contract or unexpired lease has Claims that are not set forth above that relate to the executory contracts and unexpired leases set forth above, as of the Effective Date such counterparty shall be barred from asserting such Claims.

11.5    <u>Cure Claims</u>.  Any Cure Claim owed under any assumed executory contract or lease will be paid by the Reorganized Debtor in the amount set forth above through twelve equal monthly payments, the first of which will be due and payable on the fifth Business Day of the first month that is more than 30 days after the Effective Date and the remainder of which will be due on the fifth Business Day of each respective month thereafter. **To the Extent that any Cure Amounts exist, the Debtor will file a Plan Supplement one week prior to the Confirmation Hearing with proposed Cure Amounts.**

11.6    <u>Bar Date for Filing Proofs of Claim Relating to Executory Contracts and Unexpired Leases Rejected Pursuant to the Plan</u>.  Claims arising out of the rejection of an executory contract or unexpired lease pursuant to this Article of the Plan must be filed with the Court by no later than thirty (30) days after notice of entry of the Confirmation Order.  Any Claims not filed within such time will be forever barred from assertion against the Debtor and its Estate and the Reorganized Debtor and its property.  Unless otherwise Ordered by the Bankruptcy Court, all Claims arising from the rejection of executory contracts and unexpired leases shall be treated as General Unsecured Claims under the Plan.

## ARTICLE XIII.
## Effect of Confirmation

12.1    Effect of Confirmation.  Confirmation of the Plan shall discharge the Debtor from all claims that arose before the Confirmation Date.  After Confirmation, the rights and remedies of any Creditor or equity security holder shall be governed and limited by the Plan, which shall be binding upon the Debtor, its Estate, the Reorganized Debtor, Creditors, equity security holders, and all other parties in interest, regardless of whether any such Person voted to accept the Plan, and any pre-petition agreement between the Debtor and a Secured Creditor shall be deemed to have been amended to comport with the treatment being accorded to such Secured Creditor herein.   All defaults and events of default existing as of the Petition Date and as of the Effective Date shall be deemed cured, and any defaults and events of default resulting from the confirmation of the Plan, the occurrence of the Effective Date, and/or the actions and transactions contemplated by the Plan, including the payments to be made under the Plan and changes in ownership and control effectuated by the Plan, shall be waived and of no effect.

12.2    Injunction.  From and after the Effective Date, all holders of Claims shall be and are hereby permanently restrained and enjoined from:  (a) commencing or continuing in any manner, any action or other proceeding of any kind with respect to any such Claim against the Reorganized Debtor or the Assets; (b) enforcing, attaching, collecting, or recovering on account of any Claim by any manner or means, any judgment, award, decree, or order against the Reorganized Debtor or the Assets except pursuant to and in accordance with this Plan; (c) creating, perfecting, or enforcing any encumbrance of any kind against either the Assets or the Reorganized Debtor; (d) asserting any control over, interest, rights or title in or to any of the Assets except as provided in this Plan; (e) asserting any setoff, or recoupment of any kind against any obligation due the Reorganized Debtor as assignees, except upon leave of the Bankruptcy Court or except as authorized by section 553 of the Bankruptcy Code; and (f) performing any act, in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan; provided, however, that this injunction shall not bar any Creditor from asserting any right granted pursuant to this Plan; provided, further, however, that each holder of a Contested Claim shall be entitled to enforce its rights under the Plan, including seeking Allowance of such Contested Claim pursuant to the Plan.

12.3    Automatic Stay.  The automatic stay pursuant to section 362 of the Bankruptcy Code, except as previously modified by the Bankruptcy Court, shall remain in effect until the Effective Date of the Plan as to the Debtor and all Assets.  As of the Effective Date, the discharge and injunction in paragraphs 12.1 and 12.2 above shall become effective.

## ARTICLE XIV.
## Substantial Consummation

For purposes of this Plan, substantial consummation shall occur upon the commencement of distributions under the Plan.

## ARTICLE XV.
## Miscellaneous Provisions

14.1     Corporate Allocations: Any and all adjustments and reallocations among the equity security holders of the Debtor resulting from the Confirmation of this Plan shall be deemed effective as of the Effective Date, for corporation and tax purposes.

14.2     No Double Recovery: No Creditor or other party in interest shall be entitled to a double recovery on account of any Allowed Claim or interest.

14.3     Valuation Hearing: In the event that the Debtor and a Secured Creditor are unable to reach an agreement as to the value of the Collateral securing such Secured Creditor's Claim, the Debtor shall seek a valuation hearing in respect of the Collateral and, following such hearing, reserve the right to take such action as they deem advisable, including amending or modifying this Plan.

14.4     Compliance with Tax Requirements: Debtor shall comply with all withholding and reporting requirements imposed by federal, state, and local taxing authorities and any distributions hereunder shall be subject to such requirements, if any.

14.5     Revocation and Withdrawal of Plan: Debtor reserves the right to revoke or withdraw this Plan at any time prior to the Confirmation Date.

14.6     Severability of Plan Provisions.  If, prior to confirmation of the Plan, any term or provision of this Plan is held by the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy Court, at the request of the Debtor, shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be applicable as altered or interpreted.  Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of this Plan shall remain in full force and effect and shall in no way be affected, impaired or invalidated by such holding, alteration or interpretation.  The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of this Plan, as it may be altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

14.7     Exemption from Transfer Taxes and Recording Fees.  In accordance with Bankruptcy Code § 1146(a), none of the issuance, transfer or exchange of any securities under this Plan, the release of any mortgage, deed of trust or other Lien, the making, assignment, filing or recording of any lease or sublease, the vesting or transfer of title to or ownership of any of the Debtor's interests in any property, or the making or delivery of any deed, bill of sale or other instrument of transfer under, in furtherance of, or in connection with this Plan, including the releases of Liens contemplated under this Plan, shall be subject to any document recording tax, stamp tax, conveyance fee, sales or use tax, bulk sale tax, intangibles or similar tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee or other similar tax or governmental assessment in the United States.  The

Confirmation Order shall direct the appropriate federal, state and/or local governmental officials or agents to forgo the collection of any such tax or governmental assessment and to accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

14.8     Interest Accrual.  Except to the extent provided in the Plan, and with respect to and only to the extent permitted by bankruptcy law and applicable law as to Secured Claims, no post-petition interest shall accrue on any Claim or scheduled liability (including, but not limited to, Allowed Administrative Claims).

14.9     Rules of Interpretation; Computation of Time.  For purposes of this Plan, (a) any reference in this Plan to a contract, instrument, release, indenture, or other agreement or document as being in a particular form or containing particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions, (b) any reference in this Plan to an existing document or exhibit filed or to be filed means such document or exhibit as it may have been or may be amended, modified, or supplemented, (c) unless otherwise specified, all references in this Plan to Sections, Articles, and Exhibits, if any, are references to Sections, Articles, and Exhibits of or to this Plan, (d) the words "herein" and "hereto" refer to this Plan in its entirety rather than to a particular portion of this Plan, (e) the words "include", "includes" or "including" shall be deemed to be followed by the words "without limitation", whether or not they are in fact followed by those words or words of like import, (f) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of this Plan, and (g) the rules of construction set forth in Bankruptcy Code § 102 and in the Bankruptcy Rules shall apply.  In computing any period of time prescribed or allowed by this Plan, unless otherwise specifically designated herein, the provisions of Bankruptcy Rule 9006(a) shall apply.  All references to immediately available funds, dollar amounts, or cash payments contained in this Plan shall mean United States dollars.

14.10     Reservation of Rights.  This Plan shall have no force or effect unless the Bankruptcy Court shall enter the Confirmation Order and the Effective Date shall have occurred.

14.11     Further Assurances.  The Debtor, the Reorganized Debtor, and all holders of Claims receiving Payments or Distributions hereunder and all other parties in interest may and shall, from time to time, prepare, execute and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of this Plan.

14.12     Successors and Assigns.  This Plan and all rights, benefits and obligations of any Person named or referred to in this Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such Person.

14.13     Governing Law.  Unless a rule of law or procedure is supplied by federal law, including the Bankruptcy Code and Bankruptcy Rules, (a) the construction and implementation of this Plan and any agreements, documents, and instruments executed in connection with this Plan, and (b) governance matters, shall be governed by the laws of the State of Texas, without giving effect to the principles of conflict of law thereof.

14.14   Notice of Effective Date.  On or before five Business Days after the occurrence of the Effective Date, the Reorganized Debtor shall mail or cause to be mailed to all holders of Claims a notice that informs such Persons of (a) the entry of the Confirmation Order, (b) the occurrence of the Effective Date, and (c) such other matters as the Reorganized Debtor deems appropriate or as may be ordered by the Bankruptcy Court.

14.15   Waiver of Stay.  Notwithstanding Bankruptcy Rules 3002(e), 6004(h), and 6006(d), the Debtor shall be authorized to consummate this Plan and the transactions and transfers contemplated thereby immediately after entry of the Confirmation Order.

14.16   Amendments and Modifications:  This Plan may be amended, modified, supplemented, restated, or altered in whole or in part upon request, motion, or application of the Debtor at any time prior to Confirmation without notice and hearing and without additional disclosure pursuant to Section 1125 of the Bankruptcy Code if the Court finds and concludes that any such amendment, modification, supplement, restatement, or other alteration does not materially and adversely affect any Creditor or any Claim.

14.17   Consensual post-confirmation modification of plan terms:  Notwithstanding any provision set forth in this Plan, the Debtor and any Creditor provided for in this Plan may enter into any agreement(s) after confirmation which modifies that Creditor's treatment and payment terms, so long as such agreement is reduced to writing and signed by the Debtor's and consenting Creditor's authorized representatives. In such event, any modified agreement shall be deemed to supersede the terms of this Plan.

14.18   Headings:  Headings and captions are used in this Plan for convenience and reference only and such headings and captions shall not constitute a part of the Plan for any other purpose or to otherwise affect the meaning or interpretation of any term, provision, or condition of the Plan.

14.19   Entire Agreement:  The Plan sets forth the entire agreement and understanding among the parties relating to the subject matter of the Plan and the satisfaction of all Claims and interests provided in the Plan. No party shall be bound by any terms, conditions, definitions, warranties, restrictions, understandings, agreements, representations, obligations, or other requirements except for those expressly provided in the Plan, which shall supersede all prior discussions, documents, instruments, understandings, and agreements regarding the subject of the Plan.

14.20   Orders in aid of Confirmation:  Pursuant to Sections 105, 1141, 1142, and 1143 of the Bankruptcy Code, as applicable, the Bankruptcy Court may enter one or more orders in aid of Confirmation of this Plan.

DATED: February 20, 2024

Respectfully submitted,

**QUICK DRY CARPET CLEANING, LLC.**


BY: _/s/ Penny Lane_
**PRESIDENT OF QUICK DRY CARPET CLEANING, LLC**



_/s/ Todd Headden_
Todd B. Headden
  Texas Bar No. 240960285
  THeadden@HaywardFirm.com
**HAYWARD PLLC**
7600 Burnet Rd., Suite 530
Austin, Texas 78757
(737) 881-7100 (_telephone/facsimile_)

**COUNSEL FOR THE DEBTOR**

**CHAPTER 11 DEBTOR PROJECTIONS**
**Quick Dry Carpet Cleaning (23-10638)**
**Subchapter V Debtor**
Revised 6.21.2024

| | Aug | Sept | October | November | December | 2024 Total | FY2025 | FY2026 | FY2027 | FY 2028 | FY 2029 |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | Month 1 | Month 2 | Month 3 | Month 4 | Month 5 | | Months 6-17 | Months 18-29 | Months 30-41 | Months 42-53 | Months 54-60 |
| **Sales and Gross Income** | | | | | | | | | | | |
| Gross Income | $ 90,000.00 | $ 90,000.00 | $ 90,000.00 | $ 90,000.00 | $ 90,000.00 | $ 450,000.00 | $ 1,188,000.00 | $ 1,306,800.00 | $ 1,437,480.00 | $ 1,581,228.00 | $ 1,739,350.80 |
| | | | | | | | $ - | | $ - | | |
| **Prime Costs** | | | | | | | $ - | | | | |
| COGS - Supplies & Materials | $ 350.00 | $ 350.00 | $ 350.00 | $ 350.00 | $ 350.00 | $ 1,750.00 | $ 4,620.00 | $ 5,082.00 | $ 5,590.20 | $ 6,149.22 | $ 6,764.14 |
| Total Prime Costs | $ 350.00 | $ 350.00 | $ 350.00 | $ 350.00 | $ 350.00 | $ 1,750.00 | $ 4,620.00 | $ 5,082.00 | $ 5,590.20 | $ 6,149.22 | $ 6,764.14 |
| Gross Profit | $ 89,650.00 | $ 89,650.00 | $ 89,650.00 | $ 89,650.00 | $ 89,650.00 | $ 448,250.00 | $ 1,183,380.00 | $ 1,301,718.00 | $ 1,431,889.80 | $ 1,575,078.78 | $ 1,732,586.66 |
| **Operating Expenses** | | | | | | | $ - | | | | |
| **Labor** | | | | | | | | | | | |
| Contract Labor | $ 6,500.00 | $ 6,500.00 | $ 6,500.00 | $ 6,500.00 | $ 6,500.00 | $ 32,500.00 | $ 85,800.00 | $ 94,380.00 | $ 103,818.00 | $ 114,199.80 | $ 125,619.78 |
| Developers | $ 2,600.00 | $ 2,600.00 | $ 2,600.00 | $ 2,600.00 | $ 2,600.00 | $ 13,000.00 | $ 34,320.00 | $ 37,752.00 | $ 41,527.20 | $ 45,679.92 | $ 50,247.91 |
| Wages & Taxes | $ 38,342.18 | $ 38,342.18 | $ 38,342.18 | $ 38,342.18 | $ 38,342.18 | $ 191,710.90 | $ 506,116.78 | $ 556,728.45 | $ 612,401.30 | $ 673,641.43 | $ 741,005.57 |
| **Automobile** | | | | | | | $ - | | | | |
| Automobile Payments* | $ 4,308.00 | $ 4,308.00 | $ 4,308.00 | $ 3,834.00 | $ 3,834.00 | $ 20,592.00 | $ 46,018.56 | $ 29,157.02 | $ 36,350.69 | $ 36,000.00 | $ 36,000.00 |
| Fuel & Maintenance | $ 3,000.00 | $ 3,000.00 | $ 3,000.00 | $ 3,000.00 | $ 3,000.00 | $ 15,000.00 | $ 39,600.00 | $ 43,560.00 | $ 47,916.00 | $ 52,707.60 | $ 57,978.36 |
| Insurance - Automobile** | $ 1,606.70 | $ 1,606.70 | $ 1,606.70 | $ 1,606.70 | $ 1,606.70 | $ 8,033.50 | $ 21,208.44 | $ 29,329.28 | $ 32,262.21 | $ 35,488.43 | $ 39,037.28 |
| Tolls, Registration, Inspection | $ 500.00 | $ 500.00 | $ 500.00 | $ 500.00 | $ 500.00 | $ 2,500.00 | $ 6,600.00 | $ 7,260.00 | $ 7,986.00 | $ 8,784.60 | $ 9,663.06 |
| **Business Development** | | | | | | | $ - | | | | |
| Lead Referrals | $ 4,700.00 | $ 4,700.00 | $ 4,700.00 | $ 4,700.00 | $ 4,700.00 | $ 23,500.00 | $ 62,040.00 | $ 68,244.00 | $ 75,068.40 | $ 82,575.24 | $ 90,832.76 |
| Advertisements/Marketing | $ 6,000.00 | $ 6,000.00 | $ 6,000.00 | $ 6,000.00 | $ 6,000.00 | $ 30,000.00 | $ 79,200.00 | $ 87,120.00 | $ 95,832.00 | $ 105,415.20 | $ 115,956.72 |
| Marketing Agency | $ - | $ - | $ - | $ - | $ - | $ - | $ - | | $ - | $ - | $ - |
| **Office and Administration** | | | | | | | $ - | | | | |
| Software/Office Management | $ 1,532.37 | $ 1,532.37 | $ 1,532.37 | $ 1,532.37 | $ 1,532.37 | $ 7,661.85 | $ 20,227.28 | $ 22,250.01 | $ 24,475.01 | $ 26,922.52 | $ 29,614.77 |
| Salesforce (integrated CRM) | $ 1,705.60 | $ 1,705.60 | $ 1,705.60 | $ 1,705.60 | $ 1,705.60 | $ 8,528.00 | $ 22,513.92 | $ 24,765.31 | $ 27,241.84 | $ 29,966.03 | $ 32,962.63 |
| Insurance - General Liability | $ 563.93 | $ 563.93 | $ 563.93 | $ 563.93 | $ 563.93 | $ 2,819.65 | $ 7,443.88 | $ 8,188.26 | $ 9,007.09 | $ 9,907.80 | $ 10,898.58 |
| Insurance - Workers Comp | $ 266.67 | $ 266.67 | $ 266.67 | $ 266.67 | $ 266.67 | $ 1,333.35 | $ 3,520.04 | $ 3,872.05 | $ 4,259.25 | $ 4,685.18 | $ 5,153.70 |
| Lease Payments | $ 4,706.60 | $ 4,706.60 | $ 4,706.60 | $ 4,706.60 | $ 4,706.60 | $ 23,533.00 | $ 62,127.12 | $ 68,339.83 | $ 75,173.82 | $ 82,691.20 | $ 90,960.32 |
| Telephone/Communications | $ 484.66 | $ 484.66 | $ 484.66 | $ 484.66 | $ 484.66 | $ 2,423.30 | $ 6,397.51 | $ 7,037.26 | $ 7,740.99 | $ 8,515.09 | $ 9,366.60 |
| Utilities $250 COA | $ 100.00 | $ 100.00 | $ 100.00 | $ 100.00 | $ 100.00 | $ 500.00 | $ 1,320.00 | $ 1,452.00 | $ 1,597.20 | $ 1,756.92 | $ 1,932.61 |
| **Miscellaneous** | | | | | | | $ - | | | | |
| Accounting | $ 1,490.00 | $ 1,490.00 | $ 1,490.00 | $ 1,490.00 | $ 1,490.00 | $ 7,450.00 | $ 19,668.00 | $ 21,634.80 | $ 23,798.28 | $ 26,178.11 | $ 28,795.92 |
| Company uniforms | $ 200.00 | $ 200.00 | $ 200.00 | $ 200.00 | $ 200.00 | $ 1,000.00 | $ 2,640.00 | $ 2,904.00 | $ 3,194.40 | $ 3,513.84 | $ 3,865.22 |
| Miscellaneous | $ 500.00 | $ 500.00 | $ 500.00 | $ 500.00 | $ 500.00 | $ 2,500.00 | $ 6,600.00 | $ 7,260.00 | $ 7,986.00 | $ 8,784.60 | $ 9,663.06 |
| Legal | $ 1,000.00 | $ 1,000.00 | $ 1,000.00 | $ 1,000.00 | $ 1,000.00 | $ 5,000.00 | $ 13,200.00 | $ 14,520.00 | $ 15,972.00 | $ 17,569.20 | $ 19,326.12 |
| Owner's Compensation | $ 5,000.00 | $ 5,000.00 | $ 5,000.00 | $ 5,000.00 | $ 5,000.00 | $ 25,000.00 | $ 66,000.00 | $ 72,600.00 | $ 79,860.00 | $ 87,846.00 | $ 96,630.60 |
| Reserve/Misc | $ 1,700.00 | $ 1,700.00 | $ 1,700.00 | $ 1,700.00 | $ 1,700.00 | $ 8,500.00 | $ 22,440.00 | $ 24,684.00 | $ 27,152.40 | $ 29,867.64 | $ 32,854.40 |
| **Total Operating Expenses** | $ 86,806.71 | $ 86,806.71 | $ 86,806.71 | $ 86,332.71 | $ 86,332.71 | $ 433,085.55 | $ 1,139,591.77 | $ 1,233,038.29 | $ 1,360,620.09 | $ 1,492,696.34 | $ 1,638,365.97 |
| Net Income | $ 2,843.29 | $ 2,843.29 | $ 2,843.29 | $ 3,317.29 | $ 3,317.29 | $ 15,164.45 | $ 43,788.23 | $ 68,679.71 | $ 71,269.71 | $ 82,382.44 | $ 54,962.07 |
| | | | | | | | | | | | |
| **Total Reorganization Expense** | | | | | | | | | | | |
| SubV Monthly Payment | $ 3,500.00 | $ 3,500.00 | $ 3,500.00 | $ 3,500.00 | $ 3,500.00 | $ 17,500.00 | $ 48,150.00 | $ 54,000.00 | $ 57,600.00 | $ 63,776.00 | $ 38,530 |
| | | | | | | | $4,000-$4,025/Mont | $4,500/Month | $ 4,800/Month | $5,100-$5,425/Mor | $5,375-$5,650/Month |

*Budget allows for QDR to replace vehicles starting in 2027 due to wear and tear.
** Debtor will obtain collision insurance once business stabilizes.

### Exhibit B- Plan Payment Schedule
#### Quick Dry Carpet Cleaning, LLC (23-10638)
Revised June 21, 2024

| Month | # | Admin Expense Claims | Class 1- IRS* Priority @ 8% interest | Class 1- Texas Workforce Commission (Priority) | Class 1- Texas Comptroller (Priority) | Class 2- IRS (Secured) @8% interest | Class 3- Kalamata Loans (Secured) | Class 3- LionHeart (Secured) | Class 4- AmeriCredit Financial Services (Secured) @ (6.99%) | Class 5- Penny Lane | Class 6- General Unsecured Claims |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | Est. $80,000 (Hayward); $10,000 (Trustee); Hayward's Retainer ($2,652); E. Terry's Security ($9,000) | 55,144.06 | 4,999.76 | 19,253.36 | 18,475.48 | 45,406.53 | 15,118.00 | 18,083.57 | 26,000.00 | |
| Aug-24 | 1 | 3,500.00 | 500.00 | 775.00 | 500.00 | 500.00 | 500.00 | 250.00 | | 475.00 | |
| Sep-24 | 2 | 3,500.00 | 500.00 | 775.00 | 500.00 | 500.00 | 500.00 | 250.00 | | 475.00 | |
| Oct-24 | 3 | 3,500.00 | 500.00 | 775.00 | 500.00 | 500.00 | 500.00 | 250.00 | | 475.00 | |
| Nov-24 | 4 | 3,500.00 | 500.00 | 775.00 | 500.00 | 500.00 | 500.00 | 250.00 | | 475.00 | |
| Dec-24 | 5 | 3,500.00 | 500.00 | 775.00 | 500.00 | 500.00 | 500.00 | 250.00 | | 475.00 | |
| Jan-25 | 6 | 4,000.00 | 500.00 | 1,275.00 | 500.00 | 500.00 | 500.00 | 250.00 | | 475.00 | |
| Feb-25 | 7 | 4,000.00 | 500.00 | 1,275.00 | 500.00 | 500.00 | 500.00 | 250.00 | | 475.00 | |
| Mar-25 | 8 | 4,000.00 | 500.00 | 1,275.00 | 500.00 | 500.00 | 500.00 | 250.00 | | 475.00 | |
| Apr-25 | 9 | 4,000.00 | 500.00 | 1,275.00 | 500.00 | 500.00 | 500.00 | 250.00 | | 475.00 | |
| May-25 | 10 | 4,000.00 | 500.00 | 1,275.00 | 500.00 | 500.00 | 500.00 | 250.00 | | 475.00 | |
| Jun-25 | 11 | 4,000.00 | 750.00 | 1,000.00 | **228.04** | 500.00 | 500.00 | 250.00 | | 475.00 | |
| Jul-25 | 12 | 4,025.00 | 500.00 | 1,000.00 | | 500.00 | 500.00 | 250.00 | 300.00 | 475.00 | 500.00 |
| Aug-25 | 13 | 4,025.00 | 500.00 | 1,000.00 | | 500.00 | 500.00 | 250.00 | 300.00 | 475.00 | 500.00 |
| Sep-25 | 14 | 4,025.00 | 500.00 | 1,000.00 | | 500.00 | 500.00 | 250.00 | 300.00 | 475.00 | 500.00 |
| Oct-25 | 15 | 4,025.00 | 500.00 | 1,000.00 | | 500.00 | 500.00 | 250.00 | 300.00 | 475.00 | 500.00 |
| Nov-25 | 16 | 4,025.00 | 500.00 | 1,000.00 | | 500.00 | 500.00 | 250.00 | 300.00 | 475.00 | 500.00 |
| Dec-25 | 17 | 4,025.00 | 500.00 | 1,000.00 | | 500.00 | 500.00 | 250.00 | 300.00 | 475.00 | 500.00 |
| Jan-26 | 18 | 4,500.00 | 800.00 | 1,175.00 | | 500.00 | 500.00 | 250.00 | 300.00 | 475.00 | 500.00 |
| Feb-26 | 19 | 4,500.00 | 800.00 | 1,175.00 | | 500.00 | 500.00 | 250.00 | 300.00 | 475.00 | 500.00 |
| Mar-26 | 20 | 4,500.00 | 800.00 | 1,175.00 | | 500.00 | 500.00 | 250.00 | 300.00 | 475.00 | 500.00 |
| Apr-26 | 21 | 4,500.00 | 800.00 | 1,175.00 | | 500.00 | 500.00 | 250.00 | 300.00 | 475.00 | 500.00 |
| May-26 | 22 | 4,500.00 | 800.00 | 1,175.00 | | 500.00 | 500.00 | 250.00 | 300.00 | 475.00 | 500.00 |
| Jun-26 | 23 | 4,500.00 | 800.00 | 1,175.00 | | 500.00 | 500.00 | 250.00 | 300.00 | 475.00 | 500.00 |
| Jul-26 | 24 | 4,500.00 | 800.00 | 1,175.00 | | 500.00 | 500.00 | 250.00 | 300.00 | 475.00 | 500.00 |
| Aug-26 | 25 | 4,500.00 | 800.00 | 1,175.00 | | 500.00 | 500.00 | 250.00 | 300.00 | 475.00 | 500.00 |
| Sep-26 | 26 | 4,500.00 | 800.00 | 1,175.00 | | 500.00 | 500.00 | 250.00 | 300.00 | 475.00 | 500.00 |
| Oct-26 | 27 | 4,500.00 | 800.00 | 1,175.00 | | 500.00 | 500.00 | 250.00 | 300.00 | 475.00 | 500.00 |
| Nov-26 | 28 | 4,500.00 | 800.00 | 1,175.00 | | 500.00 | 500.00 | 250.00 | 300.00 | 475.00 | 500.00 |
| Dec-26 | 29 | 4,500.00 | 800.00 | 1,175.00 | | 500.00 | 500.00 | 250.00 | 300.00 | 475.00 | 500.00 |
| Jan-27 | 30 | 4,800.00 | 800.00 | 1,175.00 | | 500.00 | 500.00 | 550.00 | 300.00 | 475.00 | 500.00 |
| Feb-27 | 31 | 4,800.00 | 800.00 | 1,175.00 | | 500.00 | 500.00 | 550.00 | 300.00 | 475.00 | 500.00 |
| Mar-27 | 32 | 4,800.00 | 800.00 | 1,175.00 | | 500.00 | 500.00 | 550.00 | 300.00 | 475.00 | 500.00 |
| Apr-27 | 33 | 4,800.00 | 800.00 | 1,050.00 | | 500.00 | 500.00 | 675.00 | 300.00 | 475.00 | 500.00 |
| May-27 | 34 | 4,800.00 | 800.00 | 1,050.00 | | 500.00 | 500.00 | 675.00 | 300.00 | 475.00 | 500.00 |
| Jun-27 | 35 | 4,800.00 | 800.00 | 1,050.00 | | 500.00 | 500.00 | 675.00 | 300.00 | 475.00 | 500.00 |
| Jul-27 | 36 | 4,800.00 | 800.00 | 1,050.00 | | 500.00 | 500.00 | 675.00 | 300.00 | 475.00 | 500.00 |
| Aug-27 | 37 | 4,800.00 | 800.00 | 1,050.00 | | 500.00 | 500.00 | 675.00 | 300.00 | 475.00 | 500.00 |
| Sep-27 | 38 | 4,800.00 | 800.00 | 1,050.00 | | 500.00 | 500.00 | 675.00 | 300.00 | 475.00 | 500.00 |
| Oct-27 | 39 | 4,800.00 | 800.00 | 1,050.00 | | 500.00 | 500.00 | 675.00 | 300.00 | 475.00 | 500.00 |
| Nov-27 | 40 | 4,800.00 | 800.00 | 1,050.00 | | 500.00 | 500.00 | 675.00 | 300.00 | 475.00 | 500.00 |
| Dec-27 | 41 | 4,800.00 | 800.00 | 1,050.00 | | 500.00 | 500.00 | 675.00 | 300.00 | 475.00 | 500.00 |
| Jan-28 | 42 | 5,120.00 | 945.00 | 1,225.00 | | 500.00 | 500.00 | 675.00 | 300.00 | 475.00 | 500.00 |
| Feb-28 | 43 | 5,127.06 | 945.00 | 1,225.00 | | **282.06** | 500.00 | 900.00 | 300.00 | 475.00 | 500.00 |
| Mar-28 | 44 | 5,100.00 | 1,000.00 | 1,225.00 | | | 500.00 | 1,100.00 | 300.00 | 475.00 | 500.00 |
| Apr-28 | 45 | 5,375.00 | 1,000.00 | 1,500.00 | | | 500.00 | 1,100.00 | 300.00 | 475.00 | 500.00 |
| May-28 | 46 | 5,375.00 | 1,000.00 | 1,500.00 | | | 500.00 | 1,100.00 | 300.00 | 475.00 | 500.00 |
| Jun-28 | 47 | 5,375.00 | 1,000.00 | 1,500.00 | | | 500.00 | 1,100.00 | 300.00 | 475.00 | 500.00 |
| Jul-28 | 48 | 5,375.00 | 1,170.00 | 1,500.00 | | | **56.47** | 1,375.00 | 300.00 | 475.00 | 500.00 |
| Aug-28 | 49 | 5,425.00 | 1,275.00 | 1,500.00 | | | | 1,375.00 | 300.00 | 475.00 | 500.00 |
| Sep-28 | 50 | 5,375.00 | 1,100.00 | 1,500.00 | | | | 1,500.00 | 300.00 | 475.00 | 500.00 |
| Oct-28 | 51 | 5,375.00 | 1,100.00 | 1,500.00 | | | | 1,500.00 | 300.00 | 475.00 | 500.00 |
| Nov-28 | 52 | 5,375.00 | 1,300.00 | 1,500.00 | | | | 1,725.00 | 300.00 | $50.00 | 500.00 |
| Dec-28 | 53 | 5,375.00 | 1,350.00 | 1,500.00 | | | | 1,725.00 | 300.00 | | 500.00 |
| Jan-29 | 54 | 5,375.00 | 1,350.00 | 1,500.00 | | | | 1,725.00 | 300.00 | | 500.00 |
| Feb-29 | 55 | 5,375.00 | 1,350.00 | 1,500.00 | | | | 1,725.00 | 300.00 | | 500.00 |
| Mar-29 | 56 | 5,375.00 | 1,350.00 | 1,500.00 | | | | 1,725.00 | 300.00 | | 500.00 |
| Apr-29 | 57 | 5,605.00 | 1,300.00 | **1,405.30** | | | | 1,725.00 | 300.00 | | 875.00 |
| May-29 | 58 | 5,575.00 | 1,900.00 | | | | | 2,500.00 | 300.00 | | 875.00 |
| Jun-29 | 59 | 5,575.00 | 1,600.00 | | | | | 2,300.00 | 300.00 | | 875.00 |
| Jul-29 | 60 | 5,650.00 | 1,300.00 | | | | | **3,056.53** | **418.00** | | 875.00 |
| Total | | 279,552.06 | 51,285.00 | 67,405.30 | 5,228.04 | 21,282.06 | 23,556.47 | 45,406.53 | 15,118.00 | 24,275.00 | 26,000.00 |

# Exhibit C- Liquidation Analysis
# Quick Dry Carpet Cleaning, LLC

**Plan Proponent's Estimated Liquidation Value of Unencumbered Assets**

| Assets | | Scheduled Value* | Liquidation Value |
|---|---|---|---|
| 1 | Cash/Account Balances | $20,410.56 | $ 18,000.00 |
| 2 | Accounts Receivable | $312,935.43 | $ 40,000.00 |
| 3 | Office Furniture & Equipment | $16,250.00 | $ 500.00 |
| 4 | Machinery & Equipment | Unknown | $ 20,000.00 |
| 5 | Intangibles/IP | $5,000.00 | $ 500.00 |
| 6 | Insurance Claim (*Denied*) | Unknown | $0 |
| 7 | Vehicles | Unknown | $0 |
| | **Total** | **$354,595.99** | **$ 79,000.00** |

| | | | |
|---|---|---|---|
| Estimated Cost of Broker | | | $6,100.00 |
| Chapter 7 Trustee's Administrative Claims (Estimated) | | $ | 6,895.00 |
| Chapter 7 Trustee's Counsel and Related | | $ | 5,000.00 |
| | *Subtotal* | | *$17,995.00* |
| | **Available to Creditors** | **$** | **61,005.00** |

| | | | |
|---|---|---|---|
| Secured Claims | IRS | $ | 18,475.48 |
| | Kalamata Loans | $ | 45,406.53 |
| | | | |
| Priority Claims | Texas Comptroller | $ | 44,012.18 |
| | Texas Workforce Commission | $ | 4,999.76 |
| | Internal Revenue Service | $ | 194,756.78 |
| | | | |
| | Secured and Priority Claims | $ | 307,650.73 |

| | | |
|---|---|---|
| **Balance left for Unsecured Claims in Liquidation scenario** | **$** | **(246,645.73)** |
| | vs | |
| **Distributions for General Unsecured Claims in Chapter 11** | | **$0** |

\* Per Initial Schedules filed 9.05.23 (Docket No.40)